U.S. DIST. COURT CLERK
E.___ ___ MICH.

45

1        UNITED STATES DISTRICT COURT

2        EASTERN DISTRICT OF MICHIGAN   1998 FEB 13 ₽ 3: 40

3        SOUTHERN DIVISION- FLINT

4    _____

**F I L E D**

5   UNITED STATES OF AMERICA,

         Plaintiff,                              AUG 1 6 2002

6                                        LEONARD GREEN, Clerk

     -vs-                          FILE NUMBER
7                                  95-50061
                                   Hon. Paul V. Gadola
8                                  SENTENCE

9   DION ERIC SAVAGE,

10        Defendant.

11   _____

12

13        The proceedings held in the above entitled matter,

14   before the Honorable Paul V. Gadola, United States District

15   Judge, held in Flint, Michigan, on the 21st day of October,

16   1997.

17

18   APPEARANCES:

19   Mark C. Jones, Assistant United States Attorney, Esq.,
     (P33325)
20   600 Church Street
     Flint, MI   48502                        **Inconsistent**
21
     Appearing on behalf of the Government.      **Page**
22
     Kenneth M. Scott, Esq., (P32833) and       **Numbering**
23   A. Glenn Epps, Esq., (P13205)
     436 S. Saginaw Street
24   Flint, MI   48502

25   Appearing on behalf of the Defendant.


              DELTA COURT REPORTERS, INC.              D1
              (810) 238-3852 or (517) 781-5979
                                                       343

1              (Whereupon the following proceedings were brought into

2 session.)

3              THE COURT: Would counsel for the respective parties

4 kindly put their appearance on the record; that is names, law

5 firms and party whom you respectfully represent.

6              MR. JONES: Mark Jones, from the Flint United States

7 Attorney's office on behalf of the Government.

8              MR. SCOTT: Kenneth Scott on behalf of Dion Savage.

9              MR. EPPS: Glenn Epps on behalf of Dion Savage.

10             THE COURT: And Mr. Savage, of course, is the gentleman

11 standing with his two attorneys at the lectern, is that

12 correct.

13             MR. SCOTT: That is correct.

14             THE COURT: This, of course, is the date set for

15 sentencing in this matter.

16             Mr. Jones, did you receive the presentence report from

17 the Probation Department in a timely manner as required by the

18 rules.

19             MR. JONES: Yes, sir, your Honor.

20             THE COURT: All right.  Which of the attorneys is going

21 to speak on behalf of Mr. Savage?

22             MR. EEPS: Could we divide it up?  He'll speak with

23 regards to the presentence, and I would like to make an

24 argument, present my motion for a new trial and/or I would

25 really like to request additional time to file a motion for a

1 new trial and brief. Same problem that Mr. Grant has, we have

2 not gotten all the depositions.

3          THE COURT: As far as the sentencing portion of this,

4 Mr. Scott is going to handle that. All right.

5          Mr. Scott, did you receive the presentence report?

6          MR. SCOTT: I did not.  I did not personally.

7          THE COURT: You're substituted for another attorney?

8          MR. SCOTT: That's correct, Judge.  I was going to

9 put --

10          THE COURT: Mr. Mateo got it, you received it from him,

11 I take it?

12          MR. SCOTT: Yes, Judge.  I believe that Mr. Mateo went

13 over the presentence report with Mr. Savage and filed some

14 objections.

15          THE COURT: You have the report now, however?

16          MR. SCOTT: Yes, Judge, I, myself, went over those

17 objections that Mr. Mateo had filed. I disagree with some, some

18 he did not file.  Judge, needless to say, at this point we

19 would ask a continuance.  I'll tell you why, Judge.  One is

20 because, Judge, we're the ones that requested the trial

21 transcripts and we've been getting them in on a weekly basis.

22 Early on, Judge, I believe I notified Mr. Jones that I was

23 trying to get an adjournment of this sentencing for a pretrial

24 -- I'm sorry, for us to file our motion for the new trial.

25          In addition Judge, my having the luxury of being able

1 to read some of that, some portions of the trial transcript.

2 When I looked over the presentence report, and some of the

3 allegations that were made there, I disagree with them, they're

4 not supported by the trial transcript.

5        In addition, Judge, I had the opportunity to call Mr.

6 Tunis and I discussed with him some of this briefly, and I had

7 indicated, Judge, that one of my concerns was some of the

8 objections that were filed, they're not supported by fact or

9 law. I believe, Judge, that the rule that you're looking for is

10 Rule 32, parens 6, parens d, parens c, parens 3, parens 8, and

11 I've discussed this matter, Judge, with Mr. Jones early on,

12 Judge.  I believe that Mr. Jones was going to stipulate that we

13 would adjourn the sentencing, I believe it was for six days.

14 That would allowed me to file my motion along with the

15 affidavits and the brief for the new trial, in addition to

16 being able to file my objections to this presentence report.

17        THE COURT: Mr. Jones?

18        MR. JONES: Is the Court asking for our position on this

19 issue of adjournment of sentence or as to the new trial

20 motion?

21        THE COURT: We're not considering a new trial motion at

22 this point. Mr. Simpson, I understand, is going to make a

23 motion for a new trial.

24        MR. JONES: Your Honor, I did consider one point in

25 agreeing to it, but I told Mr. Scott that I changed my mind on

1 that point.  I would object to it particularly since we've gone

2 forward with the other two defendants, everyone is here.  Mr.

3 Scott came in with knowledge of the fact that we had a specific

4 sentencing date, he has not articulated anything specific which

5 would justify requesting this matter be adjourned.

6        Mr. Mateo is an aggressive advocate, he did file

7 objections on behalf of Mr. Savage.  Mr. Savage also had the

8 opportunity to review the presentence report and cannot, at

9 this point, articulate any factual objections to it.  It's just

10 a generalized request to adjourn it, when counsel knew he was

11 dealing with this sentencing date, is not an adequate basis for

12 doing it, and I object on the record I hear at this point.

13        MR. SCOTT: Judge, quick response.  I'll give you an

14 example in here, Judge.  It talks about a two point enhancement

15 with respect to the guns.  Now, I realize that the defendant is

16 charged with a felon in possession of a firearm; however,

17 Judge, the guns that were found at the defendant's home, I

18 believe that it was Claude Carter on direct examination

19 indicated that he'd been to Mr. Savage's home on six or seven

20 different occasions, some of those occasions that he had

21 received some drugs.  However, on cross-examination, in the

22 trial transcript, it was indicated that he'd only been there

23 twice and he hadn't been in the defendant's home. So,

24 therefore, Judge, what has happened, the defendant's going to

25 receive a two point enhancement for guns that were taken out of

1 the home when -- and there is no nexus between Count One and, I

2 believe, Count Six, Judge.   Count One is the continuing

3 criminal enterprise.   I believe Count Six is the conspiracy

4 charge. But there's no connection between the guns and drugs.

5          THE COURT: Count Six, felon in possession of a firearm.

6          MR. SCOTT: I apologize.   Count Two, Judge.   But, Judge,

7 there is no connection between or no nexus between the guns

8 that were found and this drug offense. In fact, Judge, I

9 believe in the trial transcript it speaks that those guns were

10 kept there for hunting.

11          Now, to give him a two point enhancement, Judge, in

12 order to stretch it to say that he kept the guns there for the

13 particular purpose of guarding the drugs or the drug money,

14 there is nothing, Judge, to say that there was drug money there

15 because at the time of the raid, they didn't get any money. In

16 fact, Judge, I believe they got a lot of coins. In addition to

17 that, they got some food stamps, Judge, and I think this Court

18 gave an earlier ruling during the course of the trial, was the

19 fact that the food stamps wouldn't come in.   In addition to

20 that, Judge, I believe that it was indicated in the trial

21 transcript, with respect to these searches, where it talked in

22 terms of the drugs that were hidden in some items there or

23 something, there in the home. But, Judge, when they go through

24 it, and I believe based on the testimony, they indicated one,

25 Judge, that there was no drugs found; two, the tabulation did

1 not show any drugs that were found there.  So in essence,

2 Judge, he's already been punished for a felon being in

3 possession of a firearm.

4        Then, again, to add two points, Judge, to say that this

5 gun is connected to either this continuous criminal enterprise

6 that was not operated out of the home or that it was connected

7 to the conspiracy --

8        THE COURT: You're making an argument regarding one of

9 those objections.  I think that the question before me was

10 whether or not the sentencing here ought to be adjourned.

11        MR. SCOTT: Judge, I guess what I'm saying, the reason

12 why I need the adjournment, Judge, is to be able to tie some of

13 these things that are in the presentence report that I have not

14 read and I have no knowledge of. I did pick up the file from

15 Mr. Mateo, that would have been last Monday, but there's eight

16 boxes of files, Judge. I've spent my time looking at the

17 presentence report, and trying to correlate the 50 some items

18 with the trial testimony.

19        Based on the transcripts that we have available at this

20 time, at this point, in order to be fair to Mr. Savage, Judge,

21 and considering the fact that he's looking at a life sentence,

22 even if this Court was to give me a two week adjournment,

23 Judge, at least that would give me the opportunity to go over

24 the report in conjunction with the trial transcripts, file

25 those objections and at least support those objections with

1 some fact or some law, and that's my concern at this point,

2 Judge.

3          THE COURT: Mr. Jones?

4          MR. JONES: Well, as I hear it, Mr. Scott's only basis

5 for requesting an adjournment is the issue of the gun

6 enhancement, and I think that we have enough information for

7 the Court to sufficiently rule on that point.  At this

8 juncture, I don't see a basis for adjourning this for two

9 weeks.

10          THE COURT: Sounds to me, Mr. Scott, like you really,

11 you really need the transcripts for an appeal of the

12 convictions rather than to address the matters here at this

13 sentencing hearing.  You want all these trial transcripts, and

14 I don't think that those are really essential for you at this

15 sentencing hearing. You want -- obviously, if you file an

16 appeal, you'll need the trial transcripts, but I think it's

17 premature to insist that you need them now for these

18 proceedings.

19          MR. SCOTT: Okay.  Pardon me, Judge.  Judge, what I'm

20 saying to you is that I just -- as an example, because I read

21 the transcript, and I can see the problems with that particular

22 one. I believe in there, Judge, and there are some others,

23 just, like, for instance, Mr. Mateo objection to, in his

24 controverted item number one, he objects to items 10 through

25 31, but there's no basis of fact or no basis of law in which to

1  put before this Court, and, therefore, Judge, this Court will

2  not consider this particular -- well, let me rephrase that,

3  Judge.

4        You would consider it, but there's no basis for me to

5  be able to try to persuade this Court to change it's opinion. I

6  mean, that's just a general objection with no fact or no law.

7  It just indicates that, in fact, about the polygraphs and in

8  addition, it talks in terms about Mr. Savage still continuing

9  his claim of innocence. When we go to -- when we start to get

10 to the specific objections, Judge, it would have some bearing

11 on the enhancement issue, and the other one, I believe, Judge

12 that, that I can remember in the trial transcript, is with

13 respect to Mr. Jones' allegation of perjury as it relates to

14 Mr. Savage's testimony. I haven't reviewed all of Mr. Savage's

15 testimony, Judge, I think I'm pretty clear on the law when we

16 talk in terms of someone taking the stand to exercise whatever

17 constitutional right that he may have, even though --

18        THE COURT: You don't have a constitutional right to

19 lie.

20        MR. SCOTT: Judge, Judge --

21        THE COURT: The jury said he lied beyond a reasonable

22 doubt.  The jury said he lied.

23        MR. SCOTT: Judge, I believe that was first addressed in

24 the U.S. versus Larry White case, and then subsequent to that,

25 Judge, I believe, again, that it was addressed in U.S. versus

1 Dunnigan where it talks about, Judge, where a person can take
2 the stand, if the jury disbelieves him, that's one thing.  But
3 to say, Judge, subsequently, because the jury disbelieves this
4 individual's testimony, that, in fact, he lied, that cannot --
5      THE COURT: I understand that, I understand that.  I
6 could, if I so choose, disregard the jury's verdict.  I don't
7 intend to do that.  I heard him testify and I'm convinced he
8 lied.
9      MR. SCOTT: See, Judge--
10      THE COURT: That help you?
11      MR. SCOTT: That helps.  Then I must -- Judge, I guess
12 that shows the underlying importance of my need for a
13 continuance because then I have to be able to come forth with
14 that testimony and some case law that shows that, in fact, that
15 the law says that maybe he didn't lie or it's left up to you.
16      Now, I agree, Judge, in talking with Mr. Tunis, that,
17 in fact, he did not request an enhancement. However, Judge,
18 it's left up to your discretion, and I think that a man that is
19 facing the rest of his natural life in prison, Judge, a two
20 week continuance is more than fair.
21      THE COURT: Any further comments, Mr. Jones?
22      MR. JONES: Yes, if I may.  Mr. Scott's been involved in
23 this process for some weeks.  What we need to be in position,
24 as for purposes of this sentencing, are the guidelines.
25 They're basically the important part that we are talking --

1 we're talking about a base offense level of 42, which involves

2 the CCE base offense level. There's a two point enhancement for

3 the firearm, and then the Court need to rule on the

4 Government's request for obstruction enhancement. Mr. Tunis did

5 not put that in there because he advised me that since one of

6 the two reasons that I requested the obstruction enhancement

7 requires the Court to make a finding of fact as to whether or

8 not the defendant perjured himself, that he's been instructed

9 per a request from Judge Borman that the Probation Department

10 not make this recommendation.

11        THE COURT: Where it's claimed that an obstruction of

12 justice occurred in the presence of the trial judge, then the

13 Bench or the committee of the Bench have, at least, adopted a

14 position that the Probation Department not assess those levels

15 of enhancement, but leave it up to the judge because the judge

16 heard the testimony and can make its own judgment as to whether

17 or not there was an obstruction of justice in that testimony.

18        MR. JONES: The other part, the Government in its letter

19 requested an obstruction, because of the fact this defendant

20 told Mr. Carter, he explicitly threatened him, and similarly,

21 the two preceding defendants should get an obstruction

22 enhancement relative to intimidating a witness.  Two different

23 theories for purposes of the obstruction enhancement; both

24 which are supported by the record.

25        Where I'm going, we really have -- what we're talking

1 about is the firearm and the obstruction.  The other issues

2 that counsel raised only go to a motion for a new trial.  A

3 motion for a new trial is independent from the sentencing

4 itself.

5       Assuming that counsel complies with any other rules

6 that apply, he still files a motion for new trial, and if that

7 were to be granted, that obviously undermines the sentencing at

8 a later point in time.

9       MR. SCOTT: Judge?

10       THE COURT: I'll give you the last word on it and then

11 I'll rule on this, Mr. Scott.  I don't want to spend all

12 afternoon here or all night deciding whether you get an

13 adjournment here. Rap it up.

14       MR. SCOTT: The 38 plus 4, which makes 42, plus four

15 more, Judge, which pushes him up above 46, all I'm saying to

16 you, Judge, is if I can convince this Court that the base

17 offense level should be 38, then we look at less than life in

18 prison. And that's all I'm trying to do here, Judge. And I

19 think I should, at least, be given that opportunity.  That's

20 the long and short of it.

21       THE COURT: We'll proceed with sentencing here.

22       Now, is there anything -- I just asked you whether you

23 had had any -- well, I haven't gotten -- I only got to the

24 point of asking whether you received the presentence report and

25 then got into this matter here. And, obviously, you received

1 it, you're well familiar with it.  You have discussed it with

2 Mr. Savage, correct?

3          MR. SCOTT: No, Judge.

4          THE COURT: You never discussed it with Mr. Savage?

5          MR. SCOTT: No, I didn't.

6          THE COURT: You shouldn't be in this case, Mr. Scott.

7 You haven't discussed the presentence report with your client?

8          MR. SCOTT: Judge, I indicated to the Court I just got

9 the presentence report, that's why I indicated to this Court

10 and I indicated that Mr. Mateo and Mr. Savage discussed this

11 presentence report. I went on to say, Judge, that I discussed

12 the matter with Mr. Jones as well as Mr. Tunis. I believe that,

13 Judge, at this point it's just that there was some objections

14 here, Judge, I think that need to be supported with fact or

15 with law, and then that's when we got off into that discussion.

16          But as far as the presentence report being discussed

17 with my client, Judge, I indicated to you, yes, Mr. Mateo had

18 done that.

19          THE COURT: All right.  Mr. Savage, have you discussed

20 the presentence report with Mr. Mateo, who was your attorney,

21 until recently, your trial lawyer through a lengthy, many, many

22 months awaiting trial and through a long trial, and apparently

23 he's been replaced subsequent to that time. Have you discussed

24 the presentence report with Mr. Mateo?

25          DEFENDANT SAVAGE: Yes.

1          THE COURT: When did you retain Mr. Scott in this

2 matter?

3          DEFENDANT SAVAGE: A few weeks ago.

4          THE COURT: A few weeks ago. Well, all the more reason,

5 Mr. Scott, that if you wanted to discuss it with Mr. Savage,

6 you certainly had adequate time to discuss it with the attorney

7 who represented him all through this process, and you've had

8 the report, you haven't chose to discuss it with him.  At least

9 he's familiar with it.  You could have discussed the report

10 with his attorney.

11          All right. Mr. Jones, do you wish to comment upon the

12 Probation Officer's report and the determinations therein,

13 limiting your comments to those matters at this time.

14          MR. JONES: No, your Honor.

15          THE COURT: Mr. Scott, do you wish to comment upon the

16 Probation Officer's report and the determinations therein, also

17 limiting your comments to those matters at this time, and I

18 understand there are a number of objections filed and this is

19 the point for you to address the objections.

20          MR. SCOTT: Judge, at this time, and I believe that the

21 court has received a copy of the objections, we would adopt the

22 objections that Mr. Mateo has filed, and with respect to

23 controverted item number one, Judge --

24          THE COURT: Just a moment.  Let me turn to the report

25 itself.  All right. Controverted item number one, in other

1 words, objection number one?

2        MR. SCOTT: Yes.

3        THE COURT: It just merely indicates that generally

4 there's an objection to the entire presentence investigation

5 report, specifically focusing on paragraphs 10 through 31. The

6 defendant denies any involvement in drug trafficking or any

7 continuing criminal enterprise, and denies any involvement in

8 the murders of Davis Lee Strickland and Fannie Strickland, and

9 the defendant did offer to take a Government administered

10 polygraph on June 6th, 1997.  The defendant offered to take

11 polygraph as to the issue of the murders without any

12 conditions, and this offer has never been responded to.

13        In addition, Mr. Savage took two polygraphs prior to

14 the trial with regard to the claims and search warrant

15 affidavit, the claim as to an alleged shooting at Lieutenant

16 Koger's home, Dion Savage was willing top submit to a polygraph

17 as to these issues, which was never responded to.

18        First of all, I might comment that Mr. Savage is not

19 accused of the murders of Davis Lee Strickland and Fannie

20 Strickland.  That matter only came up very peripherally during

21 the trial of this matter, in that there was testimony by a

22 witness, a Government witness that he was.  It was suggested to

23 him by Mr. Savage that it might not be healthy for him to hang

24 around with or to be near Mr. Strickland.  After Mr. Strickland

25 was killed, Mr. Savage stated in a phone call:  You see what

1 happened to Mr. Strickland.  But there never was any

2 accusations, not part of this trial.  He's not charged with any

3 drug related murders here.  It's not part of the case, not part

4 of the offense level that's involved here.  That part of the

5 objection is irrelevant.

6        As far as the polygraphs are concerned, we don't

7 receive those as evidence anyway.  With the 6th Circuit, I

8 think that's not any basis for an objection to the presentence

9 report, the fact that he wanted to take another polygraph test.

10        Further, he denies any involvement in drug trafficking,

11 any involvement of the continuing criminal enterprise.  He had

12 a jury trial on those matters, the jury found beyond a

13 reasonable doubt that he was guilty of drug trafficking, and he

14 was guilty of being involved in this continuing criminal

15 enterprise and as a leader in that continuing illegal

16 enterprise.

17        I don't know, it just seems to me that generalized

18 objection to the entire report is without any merit at all.

19        Mr. Jones, any comments you wish to make?

20        MR. JONES: Well, to supplement the record, I filed in

21 my earlier pleadings, pretrial in this matter, the polygraph

22 they're referring to was passed somewhat, subsequently

23 convicted in the case handled by Assistant U.S. Attorney Robert

24 Haviland.  Also, the polygraph was refuted by the Government's

25 polygraph operator who tested that previous defendant, and

1  found exactly to the contrary.  Polygraph evidence is not

2  admissible in court.

3          THE COURT: Objection number one, overruled.  Go to

4  number two.

5          MR. SCOTT: Controverted item number two, Judge.

6          THE COURT: That's an objection to paragraph number 30.

7          MR. SCOTT: And Judge --

8          THE COURT: In which the defendant says he did not

9  perjure himself.

10          MR. SCOTT: Judge, if I might, I think that paragraphs

11  30, 33 and 41 should be included together.

12          THE COURT: 30, 33?

13          MR. SCOTT: And 41.

14          THE COURT: And 41, and they all relate to his testimony

15  at trial.  Paragraph 30 indicates that Mr. Savage took the

16  stand and testified at trial as, indeed, he did. And further

17  states that according to some of his testimony, perjured

18  himself.  This includes but not limited to ownership of Dion's

19  Party Store, disqualified from selling food stamps, so on and

20  so on. And I might further state that, of course, in his

21  testimony, he denies he was involved in any of the criminal

22  conduct charged in this case, and 33, paragraph 33 just repeats

23  the information supplied by the Government, indicates that some

24  of the testimony at trial was false, and paragraph 41 leaves it

25  to the court's discretion as to whether there should be an

1 adjustment, that is an upward enhancement by reason of

2 obstruction of justice by perjury committed on the witness

3 stand.  Since the alleged perjury was committed in the Court's

4 presence, and the Court's in a position, Judge, those matters,

5 those three paragraphs all relate to this objection number

6 two.  Anything further you want to --

7          MR. SCOTT: Judge, I guess that the defendant's position

8 here, Judge -- and I don't know if you want to read it into the

9 record or not, I'll just briefly cover it since it's part of

10 the addendum.

11          THE COURT: Go ahead.

12          MR. SCOTT: Judge, I guess it's the position of the

13 defendant that he did not perjure himself, that he felt that he

14 had some ownership.  As a matter of fact, he doesn't have

15 ownership in the stores, and I believe that some of his

16 testimony was, Judge, that he did not have ownership in the

17 liquor license, and I believe that, Judge, this Court even

18 commented about the fact that it's a number of people who

19 really don't understand the legal connection, you can own a

20 store and then subsequently someone else owns the liquor

21 license.  The business owns the liquor license. And I think

22 that that was just a misunderstanding here, Judge, and it was

23 not perjurious.

24          In addition, Judge, I believe there was some indication

25 with respect to those ATV vehicles, and if my understanding is

1 correct, I believe that the defendant had indicated that he

2 they are -- one of them belong to his kid or one of them belong

3 to him.

4        The other part of the objection here, Judge, is with

5 respect to the food stamps. I don't even know why that would

6 be there because I believe that this Court had ruled that it

7 was not relevant with respect to this trial. And then, Judge,

8 the rest of the defendant's objections are incorporated by

9 reference, controverted item number two.

10        THE COURT: All right. Mr. Jones?

11        MR. JONES: Your Honor, as to the issue of perjury,

12 Section 3(c)1.1, I won't reread it to the Court, on two

13 previous occasions Mr. Scott has been in the courtroom, the

14 defendant took the stand, denied the fact that he was involved

15 in a continuing criminal enterprise. He was involved in the

16 sale of narcotics, and he made miscellaneous denials, including

17 things that were easily refuted when he claimed that he didn't

18 have his name on an '86 Cadillac. This was impeached with

19 Government's Exhibit 143.

20        The Court may recall something to do with the fact that

21 defense was using Phil Walker, who was gracious enough to be in

22 court today, using Phil Walker for purposes of having the

23 vehicles in his name for the insurance company and denied

24 having two 1993 all terrain vehicles. I pulled out Exhibits

25 129 and 130, and impeached him with those and consequently with

1 regard to his overall denial of the distribution of cocaine.

2          I'd like to comment on the food stamps thing.  Counsel

3 indicates the rule is irrelevant.  He may have misunderstood

4 what the evidence was, in that regard, it was that foods stamps

5 and drugs were being traded and that was deemed admissible.

6 Mr. Savage denied he's ever been disqualified from selling food

7 stamps.  He was impeached with Government's Exhibit 721.

8          In general, the Government respectfully asks the Court

9 to find that the defendant's testimony was perjurious and

10 particularly to his denial of his involvement in narcotics

11 trafficking.  Really your Honor's ruling was consistent with

12 the testimony of the previous two defendants, that he

13 threatened Claude Carter, who left town.  That's another basis

14 for finding a two point obstruction enhancement. And I would

15 urge the Court, an as alternative ruling, find that the

16 defendant should be held accountable on that theory as the

17 record is relatively sustained, very sustainable as to this

18 defendant.

19          MR. SCOTT: Quick response with respect to his testimony

20 and his continued assertion of innocence.  Judge, that falls

21 squarely within United States versus Dunnigan, 507 U.S. 87.

22 113 Supreme Court 1111, and at 1117, Judge, I believe that it

23 was clear, it said a court, of course, who has an accused

24 testify at trial and is convicted, will encourage an

25 enhancement sentence under 3(c)1.1 for committing perjury, as

1 we have just observed.  An accused's inadequate testimony due

2 to confusion, mistake or faulty memory.  In other instances,

3 that accused may testify to matters such as lack of capacity

4 and sanity, duress or self-defense. His testimony may be

5 truthful, but the jury may, nonetheless, find the testimony

6 insufficient to exclude criminal liability or proof, lack of

7 intent.  For these reasons, if a defendant objects to sentence

8 enhancement resulting from the trial testimony, the District

9 Court must review the evidence and make independent findings

10 necessary to establish a willful impediment to obstruct the

11 justice or attempt to do the same under the perjury definition

12 we have set out.

13       Judge, now when we go to the Cadillac, and Judge we all

14 do it, if we're saying that this is not my car, for example,

15 Judge, when we buy our kids a car, even though the car is

16 titled in our name, and the Michigan title shows ownership, we

17 usually say that's my kid's car.

18       So that, Judge, the court has to be cognizant of. When

19 you talk about the all terrain vehicles, Judge, if it's

20 something that needs to be titled, we say that these are my

21 kids, yes, I bought them in my name, but they're my kids. The

22 best example I know, Judge, is back under the old law it used

23 to be when the wife would go to buy a car, they wouldn't put it

24 in her name, put it in the man's name, or the husband's.  All

25 I'm saying to you, Judge, is how we say things to a specific

1 question.

2         Yes, you can impeach that because you can come up with

3 the title and say: Look, it's in your name. But in actuality,

4 I'm still saying it's not my car because I bought it for such

5 and such. And that's all I have to say about that, Judge.

6         THE COURT: Well, I heard Savage's testimony at the

7 trial, and I found a good deal of inconsistent perjury beyond

8 talk about the car ownership situation, and so forth.  He

9 testified that he was not at all involved in any of the drug

10 trafficking charges.  The evidence against him on that point

11 was overwhelming. And certainly I find, by a preponderance of

12 the evidence, he did commit perjury in that regard. The jury

13 found he committed perjury beyond a reasonable doubt.  While

14 I'm not bound by the jury's finding, I don't disagree with the

15 jury's finding here. That's the risk you take. Obviously

16 everyone in a criminal case has a right to testify or to stay

17 off the stand, but you do run the danger, if you take the stand

18 and don't tell the truth, of finding yourself in a worse mess

19 than you were initially, and that's what happened here.

20         I do not think Mr. Savage told the truth on the witness

21 stand, and so I'm going to overrule objection number two.

22         Let's go to objection number three.

23         MR. JONES: I realize the hour's late, but I

24 respectfully ask the Court to rule as to the other objection to

25 obstruction.

1          THE COURT: What's that?

2          MR. JONES: The fact, the threat to Claude Carter as

3 being an alternative basis for the obstruction of justice.

4          THE COURT: That also was established and that testimony

5 was uncontroverted during the case, and I think that also

6 consists of an obstruction of justice.

7          MR. SCOTT: Judge, I guess I'm, without a doubt, at

8 liberty to argue that point since I'm not briefed on the trial

9 testimony or the transcript, but, Judge, I believe that the

10 attorneys were arguing the fact that there was an evidentiary

11 hearing that was held with respect to revocation of the bond,

12 and I believe that they had indicated that this Court found

13 that, in fact, Mr. Savage did not threaten or -- now, if I'm

14 wrong, you correct me.

15          THE COURT: I didn't make that finding.

16          MR. SCOTT: I don't recall.  I'm only going by what the

17 arguments were. It's somehow, Judge, I believe this Court ruled

18 that we had an individual, Claude Carter, who went to Lansing,

19 and he continued to call Mr. Savage, didn't seem as though he

20 was being threatened, or was threatened, or was afraid, or

21 something of that nature. I believe, Judge, that's what I read

22 somewhere. And just based on that, Judge, that alone shows

23 that, no, he shouldn't receive an enhancement with respect to

24 this alleged threat.

25          THE COURT: Let's move to objection number three.

1        MR. SCOTT: Which is?

2        THE COURT: That's objection to paragraph 34.

3        MR. SCOTT: Judge with respect to controverted item

4 number three, I believe that the Court, as well as Government's

5 counsel, has a copy of this particular objection, and I would

6 just ask that the Court just adopt it by reference.

7        THE COURT: Mr. Jones?

8        MR. JONES: I'm not sure really what Mr. Scott's asking

9 or I need him to repeat that.  I'm sorry.

10        MR. SCOTT: Judge, if I might be more clear.  I believe

11 that number 34 deals with the adjustment for acceptance of

12 responsibility.

13        If the defendant maintains he is innocent of all

14 charges, acceptance of responsibility points will not be given.

15 And I believe what the defendant is arguing here is the fact

16 that he admitted, in fact, that the weapons were his, and I

17 believe that this admission, Judge, took place at the trial,

18 and it's my understanding of the guidelines that the admission

19 or, at least, the acceptance of responsibility must occur prior

20 to trial, and so I would just adopt the defendant's position

21 here just by reference, and then move on.

22        MR. JONES: I'm not sure --

23        THE COURT: As I understand it, Mr. Scott is saying Mr.

24 Savage acknowledges that he was in possession of a firearm, but

25 he denied that he was involved in drug trafficking or any

1 continuing criminal enterprise.  On that basis, he ought to get

2 his adjustment downward for acceptance of responsibility. Now,

3 is that --

4          MR. TUNIS: Your Honor, I might be able to assist the

5 Court.  The original presentence report indicated that Mr.

6 Savage denied all criminal charges.

7          THE COURT: Yes.

8          MR. TUNIS: After receiving that objection, the

9 presentence report was amended to indicate he acknowledged he

10 was in possession of the firearms, but that he continued to

11 maintain his innocence regarding the CCE and the conspiracy

12 charge.  So the Probation Department amended the report to

13 reflect that he did acknowledge that he was in possession of

14 the firearms.

15          THE COURT: And your conclusion was that he not be given

16 any reduction in his offense level for acceptance of

17 responsibility under those circumstances.

18          MR. TUNIS: That's correct, he's supposed to acknowledge

19 involvement in all of the convictions, not just part of them.

20          THE COURT: He acknowledged that he was involved in the

21 offense that carried the lesser of the penalties, but he denied

22 he had any involvement under the two most serious charges

23 because the continuing criminal enterprise or the conspiracy to

24 distribute cocaine, I don't think you get a reduction offense

25 level under those circumstances.

1          MR. SCOTT: Judge, whether I eat the whole apple or

2 half --

3          THE COURT: He's convicted of three offenses, two of

4 them are terribly serious, the third one not as serious. And he

5 admits that he had in his possession some guns at his house,

6 which he says he had there for hunting purposes. It was a

7 little difficult for him to deny he was in possession of

8 firearms because his neighbor happened to be the officer in

9 charge of this case, watched him ride his all terrain vehicles

10 across his property with the firearm strapped to his back.  He

11 admitted that. He doesn't get any reduction for acceptance of

12 responsibility under those circumstances.

13          All right, let's go to objection number four.

14          MR. SCOTT: Which is?

15          THE COURT: Paragraph 26 and 27.

16          MR. SCOTT: I'm sorry, Judge, paragraphs 26 and 27?

17          THE COURT: I might say that, first of all, neither of

18 the objections noted to paragraphs 26 and 27 have any impact

19 whatsoever on the guideline computations determined by the

20 Probation Department, and you can argue it if you want, it has

21 nothing to do with the calculation of his sentencing

22 guidelines.

23          MR. SCOTT: Judge, I'd just like the record to reflect

24 that we have attached an addendum to the presentence report

25 which is controverted item number four, in fact, paragraphs 26

1 and 27, and that's the defendant's position.

2          THE COURT: Mr. Jones?

3          MR. JONES: Well, your Honor, the Government's offered

4 testimony those were drug tabulations.  Though there wasn't a

5 special verdict form on that point, I strongly believe that the

6 jury agreed with that conclusion.

7          The defendant took the stand and was unable to offer

8 any explanation for them. He simply just became dumbfounded in

9 front of everyone, not explaining what those were.  I didn't

10 know what else they could point to but drugs.  I ask that be

11 struck.

12          The issue of the dog alerting, I don't have a memory of

13 that inquiry being made, but I'm not sure it's very important,

14 anyway.  The importance is the dog handler, Mark Blough, he's

15 the one trained, he knows when the dog's alerting.  Officer

16 Blough concluded that the dog was alerting, that's what's

17 controlling.  I don't see there's a basis for striking that

18 part of the presentence report just because another federal

19 agent wasn't aware of the fact that a dog was alerting for the

20 presence of narcotics.  I'd ask that the objection be

21 overruled.

22          MR. SCOTT: Judge, my understanding, the dog only

23 alerted at the marital home, that was the -- it just so happens

24 that the marital home belonged to the defendant's father.  With

25 respect to the dog alerting inside the marital home or inside

1 any of the stores, there was no testimony on that.

2          MR. JONES: I don't think that's right, your Honor.

3          MR. SCOTT: Judge, I think that the transcript speaks

4 for itself.

5          MR. JONES: If counsel has a transcript -- I'm citing

6 from -- if I could review my notes on that point.

7          THE COURT: Just, again, I suggest it's all

8 irrelevant --

9          MR. SCOTT: That's true.  I'm only making a record.

10          THE COURT: -- to this hearing because paragraphs 26 and

11 27, I believe, don't relate to the total offense level or to

12 the criminal history category or the guideline range.

13          MR. SCOTT: Does this Court wish to move on, Judge?

14          MR. JONES: Your Honor --

15          THE COURT: Mr. Savage is insisting that the items that

16 the Government introduced in evidence, for instance, the so

17 called drug tabulations were not,in fact, drug tabulations. And

18 also that the dog, whatever the dog reacted to had nothing to

19 do with narcotics.

20          Well, that's his view, but the Government's witnesses

21 testified to the contrary. And it doesn't matter really whether

22 or not we accept the information in paragraphs 26 and 27 as

23 accurate or as inaccurate, it doesn't have any impact at all on

24 the offense level or the criminal history category or the

25 guideline. I don't know why we're taking so much time on that,

1 frankly.

2        MR. SCOTT: Judge, I've already asked the Court, if you
3 wish, to move on.  I'll move on.

4        THE COURT: Yes.  I'm overruling objection number four,
5 it has nothing to do with the issues here at the sentencing
6 hearing.  It's irrelevant to the issues.

7        Item number five, objection to the entire presentence
8 report.

9        MR. SCOTT: Judge, if I might, controverted item number
10 one, and I'll just read it into the record, it's a general
11 objection to the entire presentence report because Dion Savage
12 denies any involvement in the continuing criminal enterprise or
13 drug conspiracy. The defendant must object to the entire
14 presentence investigation report, including the findings by the
15 Probation Department with regard to the base offense level.

16        Paragraph 37, the specific offense characterized by the
17 Probation Officer increases Dion Savage's liability by two
18 levels for the weapons possession in paragraph 38, and the lack
19 of adjustment for acceptance of responsibility, as reflected in
20 paragraph 43.

21        THE COURT: Mr. Jones?

22        MR. JONES: Well, as to objecting to the whole
23 presentence report, that's too broad to respond to.  Counsel
24 cannot do that.  It's simply not appropriate to do.  For that
25 reason alone, the objection itself should be overruled.

1       THE COURT: Well, there's a specific objection, he's

2 objecting there in the fifth objection, he's objecting to the

3 increase of two levels for possession of a weapon.

4       In paragraph 38, and I think that's a specific

5 objection.

6       MR. JONES: Your Honor, on that point, I read the

7 section before in the guideline manual, the fact that it was

8 possessed, defendant acknowledged that he possessed firearms,

9 that was during the time frame of the conspiracy or CCE,

10 however you want to refer to it, for which he was convicted

11 beyond a reasonable doubt. The Court referred to the fact that

12 Lieutenant Koger saw the defendant with a shotgun strapped to

13 his back.

14       To refresh the Court's memory, Lieutenant Koger also

15 overheard the defendant regularly discharging firearms,

16 excellent evidence of possession, from the residence.  When the

17 search warrant was executed, there were discharged shotgun

18 rounds in the back, on the deck area.

19       In addition, there were several guns that were seized,

20 he's admitted he possess them.

21       I would also refresh the Court's memory as to the fact

22 one of them just recently had been stolen.  Mr. McCleary is the

23 person who had purchased the shotgun, a few weeks later it was

24 stolen.  And a week later it was at Dion Savage's home.

25       Mr. Carter testified that the defendant was fast

1 natured with firearms, and that they were involved in the sale

2 of stolen firearms at Dion's store itself.  That was

3 corroborated by the fact that he had a stolen gun in his home.

4 He also testified that guns were frequently at the stores

5 themselves, locations from which the narcotics were being sold.

6         Counsel's objection earlier saying that he was

7 convicted under the felon in possession, that goes to the

8 enhancement of two points on the sentence of felon in

9 possession.  I anticipate it will be concurrent.  It must be

10 concurrent.  There's no double jeopardy sentencing issues for

11 purposes of giving a two point enhancement for the gun.

12        Factually, your Honor, there's plenty of evidence that

13 strongly establishes by a preponderance of the evidence that

14 the two point enhancement is applicable to Mr. Savage.

15        MR. SCOTT: Judge, again, and I don't want to belabor

16 that argument, as I've indicated earlier, Judge, there's no

17 nexus between the defendant and the gun -- the guns, I'm sorry.

18        THE COURT: You've made that argument, Mr. Scott.  I

19 don't think you have to enlarge on it any further.

20        MR. SCOTT: Okay.

21        THE COURT: Insofar as objection number five is

22 concerned, in regards to the firearm portion, while Mr. Savage

23 did admit possession of firearms, they were possessed, insofar

24 as I can recall, at his home. There's no, there was very little

25 evidence, if any at all, regarding drug transactions in the

32

1 home. He rode around on an all terrain vehicle with the

2 firearm. He's known to have discharged it for target practice,

3 or whatever, out in the backyard. Certainly he ended up in

4 possession of one that had been stolen, so clearly he possessed

5 a firearm. He's convicted of that, being a felon in possession

6 of a firearm. But I really question whether or not the firearms

7 are tied to the drug transactions here.

8        Therefore, on objection number five, I'm going to rule

9 that the two level enhancement for possession of a firearm is

10 not warranted here. However, I have ruled that there should be

11 a two level enhancement for obstruction of justice by reason of

12 perjury during the trial, and by reason of intimidation or

13 attempted intimidation of a witness.

14        So I take two levels off by reason of the deletion of

15 the gun charge, and adding back two levels for obstruction of

16 justice, we still end up with exact same point, that is with a

17 total offense level of 44 and with a criminal history category

18 of two, and that results in a guideline range of life

19 imprisonment.

20        Now, then, moving on, I believe that concludes the

21 matters involving the presentence report and the objections

22 thereto.

23        Mr. Jones, you wish to make any comment on matters

24 relating to an appropriate sentence or provide any information

25 relating to an appropriate sentence?

1          MR. JONES: Yes.  Just for purposes of two things I'd

2 like to make some comments. The Court has ruled on the

3 guidelines. I would add, independent of the guidelines

4 mandatory, the life term, that statutorily this defendant is

5 also facing life.  So even putting aside the rulings of the

6 Court, pursuant to Title 21, United States Code, Section

7 848(b), the defendant has a mandatory life term in that

8 pursuant --

9          THE COURT: I believe that's correct, and that would

10 even be irrespective of the sentencing guidelines. The Count,

11 Count One, the continued criminal enterprise count here carries

12 a mandatory life in prison sentence, irrelevant of this other

13 controverted issue over the guidelines and offense level and

14 all that sort of thing.

15          MR. JONES: I would add specifically to that point

16 because the violation referred to in Count One involved, at

17 least, 300 times the quantity of substance described in

18 841(b)(1)(b).  15 hundred grams of crack cocaine is sufficient,

19 that's with a base offense level of 38 as far as quantities

20 go.  The record does sustain independent of that.  There was

21 101 half kilos of crack cocaine.  I believe the testimony was

22 to a much larger amount than that.  So I just want to say, for

23 purposes of our record, that independent of the guideline

24 calculation, the statute requires a mandatory life.

25          The other point, your Honor, is, to refresh the Court's

1  memory for purposes of sentencing, Mr. Savage, he should only

2  be sentenced on Count One and Six.   Count Two, the conspiracy

3  offense, he does stand convicted of, but should not be

4  sentenced on it because of the fact that's basically contained

5  within the CCE. I would simply ask that be held in abeyance

6  relative to a pending appeal issue, which I have asked with

7  this court and other courts successfully, without complaint.   I

8  only refresh the court's memory.   He shouldn't be sentenced on

9  Count Two.

10       THE COURT: Thank you. Mr. Scott, do you have any --

11  just a moment -- comments which you wish to make on matters

12  related to an appropriate sentence in this case or present any

13  information relating to an appropriate sentence.

14       MR. SCOTT: Judge, I would just make a brief comment,

15  Judge, and that is that we would -- we're totally opposed to

16  any sentence that may be meted out in this particular case

17  since the charges were or, at least, the underlying basis for

18  these charges was crack cocaine. And we surely take offense to

19  an individual receiving an enhanced punishment based on the

20  fact that he had cocaine base as opposed to cocaine powder.

21       So, Judge, we feel that any sentence would deny equal

22  protection of due process.

23       THE COURT: Mr. Savage, at this time you have the right

24  to address the court.  Do you wish to make a statement

25  regarding your sentence or present any information in

1 mitigation of your sentence?

2         DEFENDANT SAVAGE: Yeah.

3         THE COURT: Go ahead.

4         DEFENDANT SAVAGE: That I'm not a drug dealer.  I've got

5 four kids and a wife, and I would never put them through this,

6 this humiliated them.  I would never humiliate my mother and

7 father like this.  I am not a drug dealer.

8         THE COURT: All right. Thank you. Mr. Savage, despite

9 what you say, there was a tremendous volume of evidence

10 presented here that convinced the jury beyond a reasonable

11 doubt that you are, in fact, a drug dealer, and, in fact,

12 you're a leader of a continuing criminal enterprise and

13 conspirator, and have been so involved for a considerable

14 period of time.

15        The Court -- there was an indication that there was

16 going to be a motion for a new trial, and I don't know if you

17 want to make the motion before I impose the sentence?

18        MR. SCOTT: Yes, Judge, and --

19        MR. EPPS: I don't really think it's necessary since our

20 motion is late anyway. The hour.

21        THE COURT: Let me ask you what is your motion based

22 upon, errors during the trial.

23        MR. EPPS: Errors during the trial, the jury selection,

24 the kicking off of people on the jury, and the fact that we

25 feel that the Court somehow gave the appearance of being

1 partial to the prosecution by its rulings, and I cite certain

2 examples, but I hope the Court is not like my professor at U.

3 of M., who assigns me a bunch of homework to do.

4          MR. SCOTT: I guess I might have to take offense to

5 that, I'm from Michigan State.

6          MR. EPPS: I'm just saying, they give you an assignment

7 and expect that nobody else of your other five classes, your

8 professors don't give you an assignment. And that is the reason

9 why I'm not --

10          THE COURT: My question, let me just interrupt you for

11 just a moment.  Perhaps your motion for a new trial will be

12 based upon errors committed during the trial, in other words.

13          MR. EPPS: Yes, sir.

14          THE COURT: Or erroneous determinations of fact by the

15 jury, I assume, against the greater weight of the evidence, and

16 that sort of thing.

17          MR. EPPS: Yes, sir.

18          THE COURT: You're not basing this upon any new

19 evidence?

20          MR. EPPS: Not at this time.

21          THE COURT: That's not been discovered since the trial?

22          MR. EPPS: Not at this time.  I'd just like to point out

23 to the Court, we're here to make sure that Mr. Savage gets a

24 fair trial all the way.

25          THE COURT: I understand.

1        MR. EPPS: In the Philadelphia story it tells us that

2   the prosecution will have witnesses that will lie, not only

3   that, we have a Chicago incident.  This is what we're trying to

4   guard against.

5        Now, if he is, in fact, guilty, we cannot sustain that.

6        THE COURT: You're asking this Court to grant a new

7   trial on the basis of errors committed during the trial.  I

8   don't take offense to that, if you think I was not impartial.

9        MR. EPPS: I'd ask the Court --

10       THE COURT: Just a minute.  You think I was not

11   impartial, I also made errors during the trial.  I don't take

12   any offense with that.

13       MR. EPPS: The appearance, as I pointed out examples,

14   the Court made rulings, for instance, the Court permitted into

15   evidence the testimony of Mr. Williams as to what Lee

16   Strickland said about Dion. And then would not let into

17   evidence the testimony of Lock.

18       THE COURT: So you claim those are errors made by the

19   Court, right?

20       MR. EPPS: Also giving the appearance of impartiality,

21   non partiality.

22       THE COURT: You said that several times.  The reason I

23   inquired of this, I'm looking at Rule 33.

24       MR. EPPS: I am too, your Honor.

25       THE COURT: Rule 33 says in part: A motion for a new

1 trial based on the grounds of newly discovered evidence, may be

2 made only before or within two years after final judgment, but

3 if an appeal is pending, the Court may grant the motion only on

4 remand of the case. A motion for a new trial based on any other

5 grounds shall be made within seven days after verdict or

6 finding of guilty or within such further time as the Court may

7 fix during the seven day period.

8        Now, here there was no motion for a new trial made

9 within seven days of verdict, and there was no request for

10 extension of time to file a motion for a new trial within the

11 seven days following the verdict; therefore, a motion for a new

12 trial is too late at this point. I have no authority whatsoever

13 under the rule to even hear a motion for a new trial under

14 those circumstances.

15        MR. EPPS: May I just point out one thing.

16        THE COURT: Uh-huh.

17        MR. EPPS: It says in the first paragraph, the Court, on

18 motion of the defendant, may grant a new trial to that

19 defendant, if required in the interest of justice.

20        THE COURT: I know it, but it also sets the time period.

21        MR. EPPS: I'm not sure it sets the time period for if

22 justice requires it.

23        THE COURT: No.

24        MR. EPPS: That's my argument.  That's all I care to

25 say.

1      THE COURT: Okay.  But a motion for a new trial based on

2  any grounds other than discovery of new evidence must be made

3  within seven days of the verdict unless within those seven days

4  there's a request made by the two top courts for additional

5  time. That wasn't done; therefore, the Court has no authority

6  to even hear a motion for a new trial; and, therefore, will

7  proceed with the sentencing. Thank you. Your remedy's -- I'm

8  sure there will be an appeal.

9      MR. EPPS: I'm certain there will be.

10     THE COURT: Your remedy is not for a new trial.

11     MR. EPPS: But I was asking for a new trial.

12     THE COURT: I understand it, but the Rule doesn't permit

13 me to even hear a motion for a new trial.  It wasn't done in a

14 timely manner.

15     MR. EPPS: I have been up to the 6th Circuit on a

16 similar type situation.

17     THE COURT: They're still there.

18     MR. EPPS: I'm not talking about -- it's one I lost.

19     THE COURT: They'll be glad to hear you.

20     MR. EPPS: Oh, well, they will.

21     THE COURT: Okay. I'm ready to proceed then with the

22 matter of sentencing. And I have commented, Mr. Savage, on the

23 fact that you were convicted by a jury on some very, very

24 serious charges. You got a base offense level of 44, and a

25 criminal history category of two, which provides then for a

1 life sentence, and beyond that, the conviction on the criminal

2 continuing criminal enterprise charge on Count One calls for a

3 mandatory life sentence. So the court really doesn't have any

4 discretion at all at this point regarding the sentence that the

5 Court will impose.

6          I must say, as I said to a couple of your codefendants

7 earlier today, that there certainly was an abundance of

8 evidence that you involved yourself in a vicious, dirty, filthy

9 business, drug trafficking, a business that has destroyed this

10 community and to a great extent, it's ruined neighborhoods,

11 ruined families, ruined people, ruined kids and you're the

12 father of a number of kids, it's difficult for them to

13 understand how their father gets involved in this sort of

14 filthy business.

15          Now, the shame of it is that, I believe, you have a

16 great deal of intelligence and a great deal of business

17 abilities, it's just a shame that you saw fit to use your

18 talents in this sort of filthy business rather than get into a

19 legitimate field of enterprise.  In fact, maybe your party

20 stores originally were all legitimate forms of business.  It

21 seems they turned into a little more than being a place where

22 drugs could be obtained, and trafficked. You were involved in

23 organizing, operating a large scale narcotics trafficking

24 operation, large amounts of crack cocaine were sold from your

25 party stores located in Flint.  The conspiracy took place over

1 several years and you profited financially to a considerable

2 extent from your involvement in drug trafficking.

3          You have one prior felony, one prior misdemeanor

4 conviction.  Based on the amount of drugs distributed by you,

5 as well as your organization, as well as the fact you were

6 convicted of the continuing criminal enterprise, the statute

7 imposes a life sentence.

8          Since you have not provided any financial information

9 to the Probation Department, the Probation Department has no

10 reason to believe that you cannot afford to pay the fine at the

11 low end of the guideline range. Even though you will be

12 sentenced to life in prison -- it may seem ironic --

13 nevertheless, the court imposes, is required to impose

14 supervised release.

15          There is a 6th Circuit decision which has ruled that

16 the Court cannot sentence a defendant on both a continuing

17 criminal enterprise charge and drug conspiracy charge.

18 Therefore, the Court will sentence you on the continuing

19 criminal enterprise charge and hold the drug conspiracy

20 conviction in abeyance without sentencing, pending disposition

21 of your appeal. Therefore, there would be no sentence on Count

22 Two at this time. That sentence on Count Two, that is

23 conspiracy to distribute crack cocaine, will be held in

24 abeyance.

25          Accordingly, the sentence of the Court in this matter

1 is as follow:  On Counts One and Six, pursuant to the

2 Sentencing Reform Act of 1984, it's the judgment of this Court

3 that the Defendant, Dion Savage, is hereby committed to the

4 custody of the United States Bureau of Prisons to be imprisoned

5 for the remainder of his life.  This term consists of life on

6 Count One and 10 years on Count Six, to be served concurrently.

7         A $25,000 fine is imposed pursuant to Title 18, United

8 States Code, Section 3471.

9         The defendant is to pay a special assessment of $100 on

10 Count One and $50 on Count Six.

11         Upon release from imprisonment, the defendant shall be

12 placed on supervised release for a term of five years on Count

13 One, and three years on Count Six, to run concurrently, even

14 though that seems to be a bit ridiculous under the

15 circumstances of the sentence.

16         Within 72 hours of release from custody of the Bureau

17 of Prisons, the defendant shall report to the Probation

18 Department in the District to which the defendant is released.

19         While on supervised release, the defendant shall comply

20 with the standard conditions of supervised release that's been

21 adopted by the United States District Court for the Eastern

22 District of Michigan.

23         Now, Mr. Savage, you do have the right to appeal your

24 conviction in this matter, and you also have a statutory right

25 to appeal your sentence under certain circumstances,

1 particularly if you think that the sentence is contrary to

2 law.

3        If you're unable to pay the costs of that appeal, you

4 may apply for leave to appeal in the form of pauperis, that

5 term meaning you're without funds to defray the expenses of

6 your appeal.

7        With few exceptions, any notice of appeal must filled

8 within 10 days of judgment being entered in your case.

9        Further, the Clerk of the Court will prepare and file

10 forthwith a notice of appeal on your behalf.

11        Mr. Jones, do you have any questions regarding the

12 sentence that the Court imposed?

13        MR. JONES: No, your Honor.

14        THE COURT: All right.  Mr. Scott, do you have any

15 questions regarding the sentence that the Court imposed?

16        MR. SCOTT: No, Judge.  Just for the record, Mr. Savage

17 informed me that he did ask his previous counsel to file his

18 motion for a new trial within the seven days matter.

19        THE COURT: Take that up with the court clerk.

20        MR. SCOTT: I wanted to make a record, Judge.

21        THE COURT: Mr. Savage, do you have any questions

22 regarding the sentence of the Court as imposed?

23        DEFENDANT SAVAGE: No.

24        THE COURT: Defendant is remanded to the custody of the

25 United States Marshal.

1            (Whereupon the sentence was concluded.)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1 STATE OF MICHIGAN)

2        ) SS

3 COUNTY OF SAGINAW)

4      I, SUSAN REED VALENTINE, Certified Shorthand Reporter,

5 do certify I stenographically recorded the proceedings had in

6 the above entitled matter before the Honorable Paul V. Gadola,

7 United States District Judge, in Flint, Michigan.

8

9      I further certify that the foregoing is a true report

10 of my shorthand notes then and there taken.

11

12

13

14    _Susan Reed Valentine_

15    SUSAN REED VALENTINE, CSR 2338

16    Notary Public, Saginaw County, MI
   My comm. Expires:  4-20-2000

17

18

19

20

21

22

23

24

25