

FILED
JAN 0 2 2019
CLERK'S OFFICE
DETROIT

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

               Plaintiff,

v.

DION ERIC SAVAGE,

               Defendant.

                        /

CRIM. CASE NO: 95-50061

HONORABLE BERNARD A. FRIENDMAN
U.S. DISTRICT JUDGE

SUPPLEMENTAL MOTION TO THE § 3582(c)(2) MOTION,
IN LIGHT OF THE FIRST STEP ACT/GOOD TIME CREDITIS 1/

NOW COMES Dion Savage, proceeding Pro Se in the above captioned-matter. The Defendant invokes the legal doctrine as prescribed under Franklin v. Rose, 765 F.2d 82, 84-85 (6th Cir. 1985).

The Defendant is supplementing his § 3582(c)(2) motion in light of the First Step Act's retroactivity provision for Good Time Credits. In light of the Good Time Credits which are retroactively applicable, the Defendant moves the Court to apply the Good Time Credits to my supervised release. According to the provision for Good Time Credit a prisoner can receive 10 days and up to 15 days off of his/her sentence per month.

The Defendant was sentenced on 10/21/97 and I have been programing every since I was housed in Milan Detention Center (working in Food Service). The Defendant has been incarcerated since July 7, 1997, and in accord with the Good Time Credit I

---

1/   The First Step is now called the Criminal Justice Reform Act (S.756).

should be accorded 2400 days of good time, not to mention the additional 7 days a year that are alloted to the Defendant in light of the First Step Act which now grants 54 days of good time, instead of the 47 days that were being alloted.

Your Honor, in light of the First Step Act, which renders the Fair Sentencing Act of 2010 retroactive my mandatory minimum life sentence under § 848(b) falls to a Guideline range of 210 to 262 months (CHC II, BOL 36, minus 2 BOL point for Amendment 706, minus 4 BOL points for Amendment 750 & minus 2 BOL points for Amendment 782).  I have already done 257 months as of 12/21/18 and with my Good Time I have done well above the 262 months.

Therefore, in accord with Johnson v. United States, 529 U.S. at 60 (2000)("equitable consideration of great weight exist when an individual is incarcerated beyond the proper expiration of his prison time"); see also U.S. v. Blewett, 746 F.3d 647, 664 (6th Cir. 2013), the Defendant implores the Court to apply the above Good Time Credits to Defendant's Supervised release and render an Order granting immediate release.

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the afore-mentioned Motion has been placed in U.S. First Class Mail, this day of December 21,2018, with the postage prepaid to the party below:

U.S. Attorney's Office
200 Federal Building
600 Church Street
Flint, Mich 48503

Dion Eric Savage 19734-039
FCI Pekin
P.O. Box 5000
Pekin, IL 61555

-2-

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

              Plaintiff,

v.

DION ERIC SAVAGE,

              Defendant.

CRIM. CASE NO: 95-50061

HONORABLE BERNARD A. FRIEDMAN
U.S. DISTRICT JUDGE

_____/

MOTION PURSUANT TO 18 U.S.C. § 3582(c)(2) FOR A
SENTENCE REDUCTION IN LIGHT OF THE CRIMINAL JUSTICE
REFORM ACT (S.756), AS TO AMENDMENTS 706, 750 & 782

NOW COMES Dion Savage, proceeding Pro Se in the above captioned-matter. The Defendant invokes the legal doctrine as prescribed under Franklin v. Rose, 765 F.2d 82, 84-85 (6th Cir. 1985), in the instant proceedings. And for the reasons that follows, in light of Amendments 706, 750 & 782 and in accord with the Criminal Justice Reform Act, Defendant's prayer is that this Honorable Court will exercise its authority and jurisdiction under §§§ 3582(c)(2)/ 3553(a) & 1B.1(a)(1)/1B1.10(a)(2)/1B1.10 cmt. (n. 1(B)(ii) - (iii)), and enter an amended judgment reducing the "draconian" mandatory minimum life sentence initially imposed on 10/21/97 to 240-months. U.S. v. Garrett, 2014 U.S. App. LEXIS 13284 (6th Cir. 2014). In light of the Criminal Justice Reform Act (§.756) which renders the Fair Sentencing Act of 2010 retroactive, the aforementioned Amendments has the effect of lowering Defendant's applicable Guideline range to 210 to 262 months (BOL 36, CHC II). See U.S. v. Hammed, 614 F.3d 259, 267 (6th Cir. 2014).

(I)

## BACKGROUND

On October 21, 1997, as a result of Defendant being found guilty of 21 U.S.C. § 848(a), Count One, 21 U.S.C. § 846, Count Two and 18 U.S.C. § 922(g)(1), the Court imposed a mandatory minimum life sentence on Count One pursuant to § 848(b) because the Court, not the jury, attributed 1.5 kilograms of crack cocaine to Defendant. And a ten-year term was imposed for Count Six ( § 922(g)(1)), which was to run concurrent to the life sentence imposed on Count One. The Court of Appeals vacated Count Two, the conspiracy conviction. See U.S. v. Simpson, 1999 U.S. App. LEXIS 23344 (6th Cir. 1999).

(II)

## THE APPLICABLE LAW AND ARGUMENT

Under 18 U.S.C. § 3582(c)(2), the Court has jurisdiction to reduce Defendant's "draconian" mandatory minimum life sentence because the instant motion is predicated upon the SRCA Act which rendered the Fair Sentence Act of 2010 retroactive, which in turn abrogates the "draconian" life sentence imposed under § 848(b), and thus Amendments 706, 750 & 782 are applicable. Defendant is eligible for a sentence reduction because his sentence was "based on" a sentencing range that was subsequently lowered by Amendments 706, 750 & 782/SRCA Act. And "such a reduction" is consistent with applicable policy statements issued by the Sentencing Commission. §§ 3582(c)(2)/1B1.10(a). See U.S. v. Thompson, 714

-2-

F.3d 946, 948-49 (6th Cir. 2014). Section 3582(c)(2), reads in
pertinent part:

> [I]n the case of a defendant who has been sentenced
> to a term of imprisonment based on a sentencing range
> that has subsequently been lowered by the Sentencing
> Commission pursuant to 28 U.S.C. 944(o), upon motion
> of the defendant ... the court may reduce the term of
> imprisonment, after considering the factors set forth
> in section 3553(a) to the extent that they are
> applicable, if such a reduction is consistent with
> applicable policy statements issued by the Sentencing
> Commission. Id. U.S. v. Ursery, 109 F.3d 1129, 1137
> (6th Cir. 1997).

In the case at bar, at the sentencing hearing, the Court, not
the jury, in violation of the rule of law articulated in Alleyne
v. United States, 133 S.Ct. 2151, 2155, 2161-62 (2013), attributed
1.5 kilograms of crack cocaine which triggered the mandatory
minimum life sentence as to Count One pursuant to § 848(b). And
under the 1996-97 version of the Guidelines resulted in a Base [1]
Offense Level of 38. However, under the 2010 version of the
Guidelines, the aforementioned 1.5 kilograms NOW results in a
Base Offense Level of 36.

---

[1] Before the Fair Sentencing Act of 2010 was enacted into law, under § 848(b),
which requires that the violation involved 300 times the quantity of a substance
specified in § 841(b)(1)(B)(iii), the threshold amount of crack was 1.5 kilograms.
(300 times 5 grams equal 1500 grams). See, e.g., U.S. v. Jackson, 345 F.3d at
646 n. 5 (8th Cir. 2003); U.S. v. Vargas, 570 F.3d at 1007 n. 2 (8th Cir. 2009).
Now as a result of the SRCA Act which renders the FSA of 2010 retroactive, the
threshold amount of crack has been changed from 5-grams to 28-grams (841(b)(1)(B)
(iii)). See U.S. v. Carradine, 621 F.3d at 580 (6th Cir. 2010). Thus pursuant
to 841(b)(1)(B)(iii) in order to trigger the amount of crack to mandate a
mandatory miminim life sentence under § 848(b), the drug amount is required to
be at least 8.4 kilograms of crack cocaine (28 times 300=     8400 grams of
crack). See Exhibit - A & the PSI at pg. 7 indicating Derendant responsible for
1.5 kilograms of crack. In light of Exhibit - B(Affidavits of Claude Carter,
Roderick Moon, Dion Savage, II & the voicemails Carter left on my sons(Dion,II))
phone, the drug amount is called into question. U.S. v. Irons, 712 F.3d at
1190 (7th Cir. 2013). See also [docket entry 364].

§ 848(a). See <u>Hall v. U.S.</u>, 1999 U.S. App. LEXIS 31357 (6th Cir. 1998)(... 20 years in prison, the minimum sentence for a CCE conviction); <u>U.S. v. Wingo</u>, 76 Fed. Appx. 30, 36 (6th Cir. 2003) (Given that a conviction for CCE carries a statutory minimum of 20 years ...).

(III)

### POST SENTENCING CONDUCT/ §§ 3582(c)(2/3553(a) FACTORS

Section 3582(c)(2) establishes a two-step inquiry. First the Court must determine whether I am eligible for a sentence reduction, and of which the above succinctly demonstrates I am, and that is, from the "draconian" mandatory minimum life sentence under § 848(b) to BOL 36, CHC II 2̶1̶0̶ to 2̶6̶2̶-months. See §§ 1B1.10(a)(1)/1B1.10 (a)(2). Since I am, the Court must then consider whether, in its discretion, the authorized reduction is warranted in whole or in part under the circumstances. See <u>Dillon v. United States</u>, 130 S.Ct. 2683, 2691-92 (2010).

The commentary accompanying § 1B1.10 requires the Court to consider public safety factors and it permits the Court to consider my post-sentencig conduct in whether a reduction in my term of imprisonment is warranted. See U.S.S.G. § 1B1.10, cmt. (n.1(B)(ii) -(iii)).

Your Honor, I am not a threat and nor do I pose a threat or danger to anyone or the community. I have been incarcerated approxiamtely 255-months and I have procured three incident reports

Your Honor, in light of Amendments 706, 750 & 782, as a result of the SRCA Act which made the FSA of 2010 retroactive, the above Amendments undoubtedly has the effect of lowering my Guideline range, and the Court should exercise its authority and jurisdiction under §§ 3582(c)(2)/1B1.10 and reduce my sentence as follows:

| | |
|---|---|
| Original Base offesne Level (1996-97 version of the Guidelines) | +38 |
| § 3B1.1(a) Leadership Role Enhancement | + 4 |
| § 2D1.1(b)(1) Obstruction Enhancement | + 2 |
| (Total Base Offense Level is 43, not 44, pursuant to U.S.S.G. § 5A, app. n. 2) | 44 2/ |
| Amendment 706 | - 2 |
| Amendment 750 (840 G but less than 2.8 KG) | - 4 |
| Amendment 782 | - 2 |
| Corresponding Base Offense Level | 36 |
| Corresponding Guideline Range (CHC II) | 210 to 262 |

The SRCA Act which renders the FSA of 2010 retroactively and the above Amendments does indeed have the effect of lowering my Guideline range from the mandatory minimum life sentence under § 848(b), see U.S. v. Doe, 731 F.3d at 524 (6th Cir. 2013), to 210 to 262 months. Thus, the Court has the authority and jurisdiction reduce my sentence to 240-months' , the mandatory minimum term under

---

2/ Defendant's Base Offense Level is NOT 44, but in accord with U.S.S.G. § Chap. 5. pt. A, comment (n. 2), it is Base Offense Level 43. See, e.g., U.S. v. Stong, 2014 U.S. App. LEXIS 23187 (8th Cir. 2014)(quoting USSG 5, Pt. A, comt. n. 2 ("An offense level of more than 43 is to be treated as an offense level of 43"); U.S. v. Chavez, 584 F.3d 1354, 1265 n. 5 (11th Cir. 2009)(This process resulted in a total offense level of 44 which was then reduced to 43 under U.S.S.G. § 5A, App. n. 2); U.S. v. Blount, 291 F.3d at 208 (2nd Cir. 2002) (same); U.S. v. Berr, 2014 U.S. App. LEXIS 9441 (3rd Cir. 2014) & U.S. v. Goerger, 683 F.3d 1, 4 (1st Cir. 2012)(same).
  The above BOL 38, § 3B1.1(a) & § 2D1.1(b)(1) enhancements resulted in a total offense level of 44, however, in light of USSG Ch. 5, pt. A, cmt. n. 2, and offense level of more than 43 is to be treated as an offense level of 43. U.S. v. Scroggins, 411 F.3d at 574 n. 1 (5th Cir. 2005).

  Your Honor, for the record, even though this § 3582(c)(2) motion refers to the SCRA, it is actually based on the First Step Act which incoporated four provisions from the SCRA (Sen. Chuck Grassley's Bill).

and none of which were of violent nature. And for the record, the last incident report for disobeying a direct order was well over 15-yrs ago. I have been transferred from a high security (USP) to a medium facility in 2011. I have continuously kept a job and provided good reports, and I have a very good repore with both staff and inmates. I currently work in the Education Department which I really love because I love to read and learn the law (I stay in the Edu. Dep't from 7:30 a.m. unitl 10:30 a.m. recall and from 12:30 p.m. unitl 3:30 p.m. recall and until 5:00 p.m. until 8:30 p.m. recall almost 4-days a week. And on Saturday's I am there from 7:30 a.m. unitl 2:30 p.m.). I love to read and learn the law. To verify the above and the classes and courses I have taken since being incarcerated, I ask the Court to review my Progress Report. See Exhibit - **C**. My post-sentencing conduct is nearly impeccable and a reduced sentence for Count One would be "sufficient, but not greater than necessary" to meet the ends of justice outlined in § 3553(a) (18 U.S.C. § 3553(a) (2012)/ § 3553
**⋆**
(a)(2)(D)). And because the Court does not have any new information regarding my conduct, except as provided in the Progess Report that causes it to reach a different conclusion under the § 3553(a) factors, the Court should reduce my sentence to a term of 240-months.

In the Spirit of Empathy, Mercy and compassion I implore the Court to grant the above requested relief because Amendments 706,

**⋆**
See, e.g., U.S. v. Dixon, 2015 U.S. Dist. LEXIS 46994 (S.D.WV. 2015).

750 & 782 does indeed have the effect of lowering my Guideline range from a mandatory minimum life term under § 848(b) to BOL 36, CHC II 210 to 262-months' and the § 3553(a) factors. Hameed, 614 F.3d at 267.

This is the Greates Country on the face of the Planet Earth, home of the brave and land of the free. America is also known as the "land of second chances," thus I implore the Court to reduce my sentence as was done in the cases of Eric L. Simpson, Mark Anderson and Martez Coleman, who are all at home now.

(IV)

### IMMEDAITE RELEASE IS APPLICABLE

If the Court, in accord with § 1B1.10(a) apply the 210 to 262 Guideline range and imposed the mandatory minimum sentence for a § 848(a) offense of 20 years, I have already served beyond the 17 years and 4 months that is required on a 20 year federal term. The Court has the inherent power to render an Order of immediate release because, in light of the above, I am eligible for immediate release. See, e.g., Adams v. U.S., 2012 U.S. Dist. LEXIS 155205 (E.D.Tenn. 2012); U.S. v. Boatwright, 2012 U.S. Dist. LEXIS 72385 (E.D.Tenn. 2012); U.S. v. Watson, 2012 U.S. Dist. LEXIS 129555 (E.D.Tenn. 2012)(Further in light of the Court reduction of the defendant's sentence, that it appears the defendant will be eligible for immediate release ...). And pursuant to United States v. Johnson, 529 U.S. 53, 60 (2000), I requests that the extra time served be subtracted from my supervised release. See also Alli-Balogun v. U.S., 2015 U.S. Dist. LEXIS 92307 (E.D.N.Y. 2015).

-7-

WHEREFORE, for the valid and meritorious reasons above I respectfully requests the Court to enter an amended judgment reducing the "draconian" mandatory minimum life sentence" to a 240-month term of imprisonment, the middle range of 210 to 262 months. 3/

## CERTIFICATE OF SERVICE

I hereby certify that a true and complete copy of the fore-going § 3582(c)(2) Motion has been placed in U.S. First Class Mail, with the postage prepaid to the party below:

Robert W. Haviland, AUSA
210 Federal Building
600 Church Street
Flint, Mich 48503

Dion Eric Savage 19734-039
FCI Pekin
P.O. Box 5000
Pekin, IL 61555

---

3/ The following evidence, in accord with U.S. v. Irons, 712 F.3d 348, 361-62 (7th Cir. 2013)("In the absence of actual evidence controverting the information in the PSR, i.e., somehting more than the appellant's mere denial, it [is] not necessary for [a] court to conduct any further inquiry into the disputed sentencing issues"), undoubtedly undermines and controverts the 1.5 kilogram of crack cocaine attributed at the 10/21/97 sentencing hearing, see Exhibit - A @ pg. 33-34 and the PSR @ pg. 7. The voicemail messages Carter left on my sons cell phone ("I was not selling drugs out that store. I was not selling drugs out that store." Whatever I did at Phil's that was a different story. pg. 7  "Yeah. Yeah, I NEVER sold no dope at Dion's Party Store. It was that nigger Franks that did that shit. Yeah, I was dirty at Phil's. But I cleaned up when it came to Dion. pg. 9  All this motherfucking time I was suppose to be selling dope out of Dion's Party Store. Man, come on, man, all this orchestrated ass shit ... Yeah, I'm going to go on and tell you every WORD and everyting as ORCHESTRATED -- ORCHESTRATED and I'm suppose to put my signature on some shit [Affidavit]. Everything was ORCHESTRATED. pg. 10-11. The Affidavit of Dion Savage, II @ paragraphs 3 ... Claude said that [my father] was not a drug dealer. Para 4 after reading the contents of the Affidavit my son presented to Carter this is what he said "this is it, this is deep, this the TRUTH. Para. 5 I asked Claude was my father innocent and he said "yes, he is innocent. The police coerced Carter into testifying falsely against my father, by threatening his life and his families life and that they would make sure that he got 20 years in prison if he did not say that my father was giving him drugs to sell. Para 6. The hand written letter of 8/14/05 @ pgs. 3-4. Affidavit of Roderick Moon para 6-8 & Affidavit of Laquisha Savage @ para. 2-3. And Affidavit of Zackery Franklin.                -8-

1

1     UNITED STATES DISTRICT COURT

2     EASTERN DISTRICT OF MICHIGAN

3     SOUTHERN DIVISION- FLINT

4     _____

5     UNITED STATES OF AMERICA,
            Plaintiff,

6

7     -vs-                              FILE NUMBER
                                        95-50061
                                        Hon. Paul V. Gadola
8                                       SENTENCE

9     DION ERIC SAVAGE,

10          Defendant.

11    _____

12

13          The proceedings held in the above entitled matter,

14    before the Honorable Paul V. Gadola, United States District

15    Judge, held in Flint, Michigan, on the 21st day of October,

16    1997.

17

18    APPEARANCES:

19    Mark C. Jones, Assistant United States Attorney, Esq.,
        (P33325)
20    600 Church Street
      Flint, MI   48502
21
      Appearing on behalf of the Government.
22
      Kenneth M. Scott, Esq., (P32833) and
23    A. Glenn Epps, Esq., (P13205)
      436 S. Saginaw Street
24    Flint, MI   48502

25    Appearing on behalf of the Defendant.

DELTA COURT REPORTERS, INC.
(810) 238-3852 or (517) 781-5979

U.S. DIST. COURT CLERK
MICH.

1998 FEB 13 P 3: 40

FILED

AUG 1 6 2002

LEONARD GREEN, Clerk

1          MR. JONES: Yes.  Just for purposes of two things I'd

2    like to make some comments. The Court has ruled on the

3    guidelines. I would add, independent of the guidelines

4    mandatory, the life term, that statutorily this defendant is

5    also facing life.  So even putting aside the rulings of the

6    Court, pursuant to Title 21, United States Code, Section

7    848(b), the defendant has a mandatory life term in that

8    pursuant --

9          THE COURT: I believe that's correct, and that would

10   even be irrespective of the sentencing guidelines. The Count,

11   Count One, the continued criminal enterprise count here carries

12   a mandatory life in prison sentence, irrelevant of this other

13   controverted issue over the guidelines and offense level and

14   all that sort of thing.

15         MR. JONES: I would add specifically to that point

16   because the violation referred to in Count One involved, at

17   least, 300 times the quantity of substance described in

18   841(b)(1)(b).  15 hundred grams of crack cocaine is sufficient,

19   that's with a base offense level of 38 as far as quantities

20   go.  The record does sustain independent of that.  There was

21   101 half kilos of crack cocaine.  I believe the testimony was

22   to a much larger amount than that.  So I just want to say, for

23   purposes of our record, that independent of the guideline

24   calculation, the statute requires a mandatory life.

25         The other point, your Honor, is, to refresh the Court's

1  memory for purposes of sentencing, Mr. Savage, he should only

2  be sentenced on Count One and Six.  Count Two, the conspiracy

3  offense, he does stand convicted of, but should not be

4  sentenced on it because of the fact that's basically contained

5  within the CCE. I would simply ask that be held in abeyance

6  relative to a pending appeal issue, which I have asked with

7  this court and other courts successfully, without complaint.  I

8  only refresh the court's memory.  He shouldn't be sentenced on

9  Count Two.

10       THE COURT: Thank you. Mr. Scott, do you have any --

11  just a moment -- comments which you wish to make on matters

12  related to an appropriate sentence in this case or present any

13  information relating to an appropriate sentence.

14       MR. SCOTT: Judge, I would just make a brief comment,

15  Judge, and that is that we would -- we're totally opposed to

16  any sentence that may be meted out in this particular case

17  since the charges were or, at least, the underlying basis for

18  these charges was crack cocaine. And we surely take offense to

19  an individual receiving an enhanced punishment based on the

20  fact that he had cocaine base as opposed to cocaine powder.

21       So, Judge, we feel that any sentence would deny equal

22  protection of due process.

23       THE COURT: Mr. Savage, at this time you have the right

24  to address the court.  Do you wish to make a statement

25  regarding your sentence or present any information in

DELTA COURT REPORTERS, INC.
(810) 238-3852 or (517) 781-5979

1 mitigation of your sentence?

2          DEFENDANT SAVAGE: Yeah.

3          THE COURT: Go ahead.

4          DEFENDANT SAVAGE: That I'm not a drug dealer.  I've got

5 four kids and a wife, and I would never put them through this,

6 this humiliated them.  I would never humiliate my mother and

7 father like this.  I am not a drug dealer.

8          THE COURT: All right. Thank you. Mr. Savage, despite

9 what you say, there was a tremendous volume of evidence

10 presented here that convinced the jury beyond a reasonable

11 doubt that you are, in fact, a drug dealer, and, in fact,

12 you're a leader of a continuing criminal enterprise and

13 conspirator, and have been so involved for a considerable

14 period of time.

15          The Court -- there was an indication that there was

16 going to be a motion for a new trial, and I don't know if you

17 want to make the motion before I impose the sentence?

18          MR. SCOTT: Yes, Judge, and --

19          MR. EPPS: I don't really think it's necessary since our

20 motion is late anyway. The hour.

21          THE COURT: Let me ask you what is your motion based

22 upon, errors during the trial.

23          MR. EPPS: Errors during the trial, the jury selection,

24 the kicking off of people on the jury, and the fact that we

25 feel that the Court somehow gave the appearance of being

1          THE COURT: Okay.  But a motion for a new trial based on

2    any grounds other than discovery of new evidence must be made

3    within seven days of the verdict unless within those seven days

4    there's a request made by the two top courts for additional

5    time. That wasn't done; therefore, the Court has no authority

6    to even hear a motion for a new trial; and, therefore, will

7    proceed with the sentencing. Thank you. Your remedy's -- I'm

8    sure there will be an appeal.

9          MR. EPPS: I'm certain there will be.

10          THE COURT: Your remedy is not for a new trial.

11          MR. EPPS: But I was asking for a new trial.

12          THE COURT: I understand it, but the Rule doesn't permit

13    me to even hear a motion for a new trial.  It wasn't done in a

14    timely manner.

15          MR. EPPS: I have been up to the 6th Circuit on a

16    similar type situation.

17          THE COURT: They're still there.

18          MR. EPPS: I'm not talking about -- it's one I lost.

19          THE COURT: They'll be glad to hear you.

20          MR. EPPS: Oh, well, they will.

21          THE COURT: Okay. I'm ready to proceed then with the

22    matter of sentencing. And I have commented, Mr. Savage, on the

23    fact that you were convicted by a jury on some very, very

24    serious charges. You got a base offense level of 44, and a

25    criminal history category of two, which provides then for a

1  life sentence, and beyond that, the conviction on the criminal

2  continuing criminal enterprise charge on Count One calls for a

3  mandatory life sentence. So the court really doesn't have any

4  discretion at all at this point regarding the sentence that the

5  Court will impose.

6          I must say, as I said to a couple of your codefendants

7  earlier today, that there certainly was an abundance of

8  evidence that you involved yourself in a vicious, dirty, filthy

9  business, drug trafficking, a business that has destroyed this

10  community and to a great extent, it's ruined neighborhoods,

11  ruined families, ruined people, ruined kids and you're the

12  father of a number of kids, it's difficult for them to

13  understand how their father gets involved in this sort of

14  filthy business.

15          Now, the shame of it is that, I believe, you have a

16  great deal of intelligence and a great deal of business

17  abilities, it's just a shame that you saw fit to use your

18  talents in this sort of filthy business rather than get into a

19  legitimate field of enterprise.  In fact, maybe your party

20  stores originally were all legitimate forms of business.  It

21  seems they turned into a little more than being a place where

22  drugs could be obtained, and trafficked. You were involved in

23  organizing, operating a large scale narcotics trafficking

24  operation, large amounts of crack cocaine were sold from your

25  party stores located in Flint.  The conspiracy took place over

1 STATE OF MICHIGAN)

2              ) SS

3 COUNTY OF SAGINAW)

4        I, SUSAN REED VALENTINE, Certified Shorthand Reporter,

5 do certify I stenographically recorded the proceedings had in

6 the above entitled matter before the Honorable Paul V. Gadola,

7 United States District Judge, in Flint, Michigan.

8

9        I further certify that the foregoing is a true report

10 of my shorthand notes then and there taken.

11

12

13

14        *Susan Reed Valentine*

15    SUSAN REED VALENTINE, CSR 2338

16    Notary Public, Saginaw County, MI
      My comm. Expires:  4-20-2000

17

18

19

20

21

22

23

24

25

```
 1                          STATE OF MICHIGAN

 2                          COUNTY OF GENESEE

 3

 4   IN THE MATTER OF:

 5   United States of America,

 6                          Plaintiff,

 7   vs.

 8   Dion Savage,

 9                          Defendant.

10   _____/

11

12                  TRANSCRIPTION OF AUDIO TAPE

13

14

15

16

17

18

19

20

21

22

23

24

25
```

"B"

2

```
 1              ANSWERING MACHINE:  Messages:  Sunday, 6:02 A.M.
 2              CLAUDE CARTER:  Hey, man, you and your father got
 3    me scared then a motherfucker with this federal ass shit.
 4    She -- Now, I've been listening to the voice mails, man, you
 5    leaving me saying I'm on the bullshit.  I'm going to tell you
 6    on the up and up so you can tell your old man.  I'm terrified
 7    on either end.  Oh, it don't got nothing to do with the
 8    boxing shit or nothing like.  It's got to do with carrying a
 9    piece every day, carrying a strap every day, worrying about
10    when the motherfucker gonna attack.  Ain't no gangs to that.
11    This shit is real life.  Don't got nothing to do with no
12    boxing.  Don't got nothing to do with no fights.  This got to
13    do with carrying a piece and being terrified every day that
14    I'm supposed to feel that this shit was all my fault.
15              The only thing that injunctions and all this shit
16    that your father had against the police brought the whole
17    police force looking for him and now you're putting the
18    pressure on me and your father putting the pressure on me.
19    Now, I'm going to tell you a little something I wasn't going
20    to say.  That I went on ahead and inverstigated that shit is
21    like the minute I change my shit they're going to come at me
22    for perjury and then I got to worry about what kind of
23    physical confrontation me and you going to have if I don't do
24    the thing that you want me to do or how I'm going to deal
25    with this shit about your father.  You know what I'm saying?
```

3

1   I mean, I can't really -- I can't really... Now, let me call
2   you right back and finish this message, man, 'cause I got to
3   -- I got to turn around and do -- Now, let me go ahead and
4   try to say.

5          Anyway, man, so I'm riding around here.  I'm
6   ducking, I'm dodging and not really knowing what the fuck is
7   going on.  And I ain't trying to be rude about it, man, but,
8   look here, I'm going to tell you like this.  I'm terrified as
9   hell and the whole story ain't been told, man, 'cause your
10  father turned his back on me.  He turned his back on me,
11  man.  You see what I'm saying?  Your father turn this back on
12  me and put me out there.  Everybody calling me a snitch
13  'cause the thing about it is all your father had to do was
14  help me then.  And these things that you're trying to do,
15  that's what I was trying to do.  I was trying to do the same
16  thing.  They was after Dion Savage and they weren't after me,
17  man.

18         So, I mean, I feel bad about what happened, but I
19  can't take the full blame for what happened because he made
20  the pressure come down on me.  Now I got to sit up and decide
21  what I'm going to do now.  I went and checked into that,
22  yeah, and that's going to create perjury for me or put me in
23  a fucked up situation because I done already did this and I
24  got to turn around and do that.  I mean, you know, that's a
25  hell of a situation for me to deal with, man.

4

1        ANSWERING MACHINE:  Saved message:  Sunday, 6:14

2    A.M.

3        CLAUDE CARTER:  Listen, like I was saying, this...

4    this ain't about me.  It ain't about no boxing, about no

5    fighting, no shit.  This is some shit I been living since

6    that happened.  And this is what pressured me into my

7    decision was your (unintelligible) for several weeks and

8    months me calling him and telling him there had been a

9    federal indictment and this thing was turned all into my lap

10   like it was me, and it wasn't me.  It was your father.  It

11   was Barksdale.  It was Jerome Kroger.  It was all these

12   different people that he was beefing with and then this shit

13   spilled over into my lap.  My association with your father

14   and then me pleading with your father to pull me up out of

15   some shit that he had started.  That battle wasn't mine, it

16   was theirs.

17        So now everybody want to just act like CC a

18   snitch, C a snitch.  Well, let me tell you something, man.

19   I'm going to be honest with you.  I wish like hell I could

20   reverse that shit, but I pleaded with your father, man, and I

21   guess he feel the ridicule that I'm suffering now.  It would

22   have been so great, but, hell, it would have been great if I

23   would have been doing 30 to life for some shit.  Yeah, there

24   was some shit to all of this.  But what I'm trying to tell

25   you is this, man.  It never at one time actually truly wanted

5

1    me.   There was a thing with your father and them and him, all

2    the different things that occurred.   And then the thing that

3    happened on Welch Street.

4              Your father took the stand and sent Moon away for

5    25 and life.   I don't know who pleaded his behalf, and I'm

6    not trying to be rude and I'm not trying to have no physical

7    confrontation with you or your family.   But what I'm saying

8    is I'm not going back to no police.   Yeah, I got involved

9    with the police then only because of the pressure.   They're

10   raiding my house, man.   They're raiding my house and didn't

11   take shit because it wasn't about me.   And this shit started

12   with Marty Monroe, man.

13             I mean, I'm in a hell of a situation right now.

14   I've been in a hell of a situation since they kicked the door

15   in.   But when they kicked the door in it was all about them

16   and your father beefing.   It was then and it is now, and I

17   just got swooped up in the madness.   That's why I can't talk

18   to you right now, man, 'cause I -- I'll tell you, I look for

19   you to be in every corner.   I look for people to be in every

20   corner.   I don't know what's going to happen.   But one thing

21   I can tell you, man, I went out like a ho before.   I can't do

22   it no more.   So when what's ever coming my way I got to try

23   to deal with it while I think to make a decision.   Several

24   time I'm on the brink of doing that, of signing that hookup,

25   man, but then I don't know what the hell.   The fear, after I

1    talked to the attorney and talked to them downtown and found

2    out what the implications of me doing it.

3         So like I say, I'm living in fear every day.  Your

4    father may be in prison.  I'm in prison out here and I'm

5    going to tell you one thing right now.  Yeah, it was a double

6    cross, but the double cross didn't come from me, man.  The

7    double cross came from somewhere else, man.  So I don't know

8    what's going to happen between me and you or every family

9    member.  Yeah, I ride in different cars and I'm looking, I'm

10   looking.  You find out where I'm at and the whole time I'm

11   thinking "What must I do?  What must I do?"  But one thing I

12   do accept, the way your father or way you been calling me I

13   was calling him every day.  Dion, it's the feds.  It's the

14   feds.  Everything I was doing and saying fell on deaf ears.

15   So now I'm looking like the bad guy.

16        ANSWERING MACHINE:  Saved message:  Sunday, 6:46

17   A.M.

18        CLAUDE CARTER:  Yeah.  And this is the thing that

19   kills me 'cause they say his association with me was what

20   brought all that on.  But, no, it was my association with

21   him.  Regardless of what he was doing, it was my association

22   with him that got me in trouble.  Despite all that, everybody

23   ain't doing the history on this.  Everybody ain't looking at

24   it.  Because your father was always superior in so many ways

25   he not even looking or trying to see my behalf in any kind of

1    way.   Can't none of you all see my situation.

2             I said that me and your father was not connected.

3    The police connected us.   I was not selling drugs out that

4    store.   I was not selling drugs out that store.   Whatever I

5    did at Phil's that was a different story.   And so whoever

6    write -- whoever wrote the story, whoever was the author of

7    the story, whoever controlled the pen, whoever controlled the

8    whole thing, I still came to your father the second day he

9    fired me.   He shouldn't have fired me, didn't even give me a

10   chance to explain or do nothing.   I couldn't go back to work.

11   But he was running from hisself.   He wasn't running from me

12   'cause they was after him.   They wasn't after me.

13            I wouldn't give a fuck if the motherfucker was

14   selling kilos or whatever they was doing.   They was after him

15   because of the confrontation and problems, the problems he's

16   got with Kroger riding an all-terrain vehicle on his

17   property, the bully mentality that he had running the police

18   off the lot.   So they got together.   I was just a pawn in the

19   game.   But I refuse to let your father send me to prison for

20   all them years when my plea to him was help me out this shit

21   that you done got me in.

22            The ridicule that I been suffering for years is my

23   pain.   And you can ridicule -- I'm going to continue

24   suffering.   How much do you think I was suffering during --

25   during that time when he and them people calling me snitches

8

1    and all that different shit for some shit when your father

2    really threw first glove.  Your father took the stand and

3    made a oath that sent a nigger to prison for 25 and life, a

4    nigger named Moon for killing that girl at the store.  And

5    I've never felt no bad ill will or wanting to come up against

6    your father until them people became involved and they trying

7    for years to get him.  But now motherfucker's looking at me

8    like I'm a dirty motherfucker spitting my name.  Yeah, I hear

9    about everybody spitting my name out, how Laquisha's talking

10   about me and the whole family talking about me.  Yeah.  And I

11   could have been the motherfucker that went down there and

12   told them ship me somewhere else, get me up out of this

13   motherfucker.  I'm fearing for my fucking life.  You know

14   what I'm saying?  But I just decide I'm like, man, I'm not

15   fixing to motherfucking keep on doing this shit.  I got to

16   straight defend myself.  I don't have no choice but to defend

17   myself as I ride this early morning thinking, thinking.  What

18   the hell am I going to do to truly come up out of this shit?

19   What is my decision?  What you all asking me to do is going

20   to take me backwards.  Is it the right thing to do?  The

21   right thing to do years ago was for your father to assist me,

22   man.

23          So, man, like I said, you always find out where

24   I'm at.  Hey, look here, man, I'm just telling you right now

25   like I'm like a wounded animal.  I know your father's

1    position.  I can't dispute that.  But I also know my

2    position, too, man.  And I did take counsel on what was going

3    to happen if I did this shit.  And, man, I guess I'll quit

4    calling your voice mail because I don't know what else to say

5    other than that.  This here is some fucked up shit, man.  I

6    just...  Damn, I just don't know what to do.  I don't even

7    want to talk to you no more right now because I'm just tired

8    of disappointing you, man.  I'm tired of not being able to

9    make decisions that you need me to make, man.  This is fucked

10   up right now.  So I don't know what to do right now, man, I

11   ain't going to lie to you.

12                ANSWERING MACHINE:  Saved message:  Sunday, 6:22

13   A.M.

14                CLAUDE CARTER:  Yeah.  Yeah, I never sold no dope

15   at Dion's Party Store.  It was that nigger Frank that did

16   that shit.  Yeah, I was dirty at Phil's.  But I cleaned up

17   when it came to Dion.  But, man, look, I got tears in my eyes

18   every motherfucking day.  I don't know what's happening.  I'm

19   really not the ho that I've been made to play myself out to

20   be in this.  One side of me I feel like a ho and one side of

21   me I feel like a bitch and the other side say stand up.

22   Because I'm going to tell you something, if it hadn't have

23   been for the pressure that they put on me and your father

24   turned his back on me there's no way that I would have done

25   that.  No way.  But he just straight up just threw me to the

1   dogs, every man for hisself.  He said if I dig a ditch deep,

2   too.  Well, I did dig a ditch and I guess in the process of

3   digging the ditch I dug, too.

4           You know, I turned 49 years old today and I say

5   will you make it to your 49th birthday?  I don't know.  I

6   don't know what's going to happen, man.  But I need somebody

7   to understand my thing, too.  As bad as it may say, here, you

8   went in there and you did this like a dirty motherfucker, but

9   the shit was done to me before then.  Believe it.  Believe

10  it.  Believe everybody is a angel but me.

11          I'm going to tell you something, the real victims,

12  the real victims was Mark and Doc that got caught up in this

13  shit.  Because that was really between me and your father.

14  And all this motherfucking time I was supposed to been

15  selling dope out of Dion's party store.  Man, come on, man,

16  all this orchestrated ass shit.

17          ANSWERING MACHIEN:  Saved message:  Sunday, 6:26

18  A.M.

19          CLAUDE CARTER:  Yeah.  Here the feds kicking my

20  door and every piece of paperwork got Dion Savage name on it,

21  vehicles, all... all of this shit.  But the first thing I did

22  was came to him, but he don't say I done already did some

23  motherfucking shit.  I'm going to tell you like this, man.

24  Yeah, I'm going to go on and tell you every word and

25  everything was orchestrated -- orchestrated and I'm supposed

11

1    to put my signature on some shit.  Everything was

2    orchestrated.  The shit was just too powerful, still is.

3           That's like right now, man, right now if I told

4    them I was being pressed about you just being his son -- I

5    know you say you don't care.  Man, that's the easy way out to

6    go tell them I'm being pressed by another family member

7    because of decisions and shit I made, you know.  Yeah, that's

8    the easy way out, man.  That's the easy way out.  I'm not

9    going to take the easy way out this time, man.  I mean, I'll

10    swear to you, man.   It ain't like I'm just no foul

11    motherfucker going around doing some dirty shit, man.  This

12    some shit your father had going on.  Do the history on that.

13           So, yeah, they knew that I was employed there and

14    they came fucking with me.  I came to your father, your

15    father turned a deaf ear to me.  I'm not turning no deaf ear.

16    What I'm doing right now is strictly out of pure fear.  On

17    one hand you got a determined young man that wants to free

18    his father, and on the other hand I got this other shit, man.

19           I really, really truly don't know exactly what

20    decision to make right now, man.  And I don't even know what

21    else you want me to say, man, you know.  And I ain't trying

22    to motherfucker call nobody out.  I ain't trying to do

23    nothing.  I live and think about what's going to happen when

24    Doc and all them get out, man.  I know eventually somebody

25    going to get hurt behind this, man.  But I'm just trying to

1  say -- let me tell you the truth, I don't even think this
2  shit was my fault, none of it.  I might have made a decision,
3  a desperate decision, but I don't -- I don't feel like this
4  shit was my fault, man, and I'm not going to lie to you.  I
5  just -- I'm not going to lie to you.  Your father took his
6  hand off of me he said because of some shit decisions that I
7  made.  The statements was never made.  I ran, man, left town
8  and called your father every day.  That wasn't no fake shit.
9  They finally caught up with me and brought me back, then it
10  was on.

11      So I know how you feel, man, 'cause I live in fear
12  every day of what's exactly going to happen.  And some of
13  them voice mails I listed to, some of them I didn't but I
14  know they're threats, man.  People making threats on me since
15  this shit happened, man.  I feel bad as hell about all this
16  shit, man.  Just don't know which way to turn, man.  I knew
17  this shit was coming eventually.

18      ANSWERING MACHINE:  You have no more messages.  To
19  play your messages, press 1.

20              (Audio tape concluded)

21

22

23

24

25

13

1

2  STATE OF MICHIGAN)

3                    )SS

4  COUNTY OF GENESEE)

5

6

7            I hereby certify that this is a true and accurate

8  transcription of the audio tape provided to me to the best of my

9  ability based upon the quality of such video tape.

10

11

12  Dated:    October 15, 2007

13                                PATRICIA A. CLIFFORD, CER-6987

14

15

16

17

18

19

20

21

22

23

24

25

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

DION ERIC SAVAGE,

                    Petitioner-Appellant,              Appeal No: 07-1487

v.

UNITED STATES OF AMERICA,

                    Respondent-Appellee.
_____/

## AFFIDAVIT OF DION ERIC SAVAGE, JR

**NOW COMES** Dion Savage Jr., and after being duly sworn, deposes and says as follows:

(1)  That I am the person giving this Affidavit.

(2)  That I have become familiar with Claude Leon Carter.

(3)  That on or about July 23, 2007, me my brothers (Dion'dre & Dion'te) and our cousin, Jaleel went to Claude Carter's house. Me and Dion'dre went and knocked on Claude's door and a lady answered the door. I asked to speak to Claude, so she called and Claude came to the door and told me and Dion'dre to come in. The he said come into my room. I then asked Claude if he knew who we were and he said no. So I introduced myself as Dion Jr., and this is my brother Dion'dre. I then told Claude that we were there for my fathers case, he then responded by saying we can't talk here, but I (Claude) can meet ya'll at Johnnie's. Claude said that he would meet me and my brother there in (20) minutes. Claude met me and my brother Dion'dre at Johnnie's and then he started going into the story, he said that he didn't want to go all into detail, can we meet somewhere to sit down and talk. I said yes. Then he went on to say that my father (Dion Sr.) was beefing with the police. Then I asked Claude was my dad selling drugs, and Claude said he was not a drug dealer.

(4)  On or about August 23, 2007, I met Claude at Martin Elementary School and he started going back over the story and said once again that the police was all over Dion. At this time I presented the Affidavit that is attached heron to Claude and he read it and said these exact words: "this is it, this is deep, this is the truth." Claude keep saying that he was going to sign the Affidavit, but he feared retaliation from the Flint Police, and the he was afraid that they would charge him with perjury. I told Claude to be a man a take responsibility for the lies he told against my father. He told me that he would sign it the next day and to have a notary of public ready.

"C"

(5) On or about September 6, 2007, I was talking to Claude Carter at 12:11 p.m., at Land Mark Supermarket. Claude started talking about what happened to my father (Dion Sr), he said that Dion had stirred up the bees nest and the bees came after him (Claude). Claude went on to say that my father was writing up injunctions on the police officers and they were very mad about it. I asked Claude if my father was innocent and he said "yes, he is innocent." I then told Claude that when Holidays came around I was so sad and depressed because my father was not home to be with his family, that I wanted to go in to the bathroom and drown myself. Claude then said to me that he wanted to face up to the facts because he said this has been bothering him day and night and he wanted to commit suicide because he knew what he did to my father was wrong. He (Claude) then said that the police forced him into testifying falsely against my father, by threatening his life and his families life and that they would make sure he got (20) years in prison if he did not say that my father was giving him drugs to sell.. Then Claude said: say like me and you riding in a pickup truck with a dead body in the back of the truck, then the police pulled us over and looked in the back of the truck and found the dead body, then the police said to him (Claude) if you don't tell me that the other guy did it, then we are going to give you these many years.

(6) That the transcripts, with Claude confessing, that is presented to this Court, are the contents of a few taped recorded conversations that Claude left on my cell phone, and that I still have a few copies of the actual taped conversations/confessions for any court or anyone else to hear for themselves.

(7) My father is not a drug dealer as he has been saying every since the first day he was vindictively indicted and the transcripts/taped phone conversations verifies this fact and I am willing to come before any court and testify truthfully to the contents of this Affidavit.

**FURTHER, THE AFFIANT SAYETH NOT.**

Subscribed and sworn to me before me,
this day _16_ of October, 2007.

_____

Notary Public

Dion Eric Savage, Jr., Affiant

_____

MY COMMISSION EXPIRES:

-2-

UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

In re Dion Eric Savage,                    CRIM. CASE NO. 95-50061-01

Petitioner.                                Appeals No:
_____/

AFFIDAVIT OF ZACKERY FRANKLIN

NOW COMES Affiant, ZACKERY FRANKLIN, and after being duly
sworn, deposes and says as follows:

1.  That I am the person giving this Affidavit.

2.  That I am familiar with Claude Carter.

3.  That in the early pary of 1997, I was in Shiawassee Couty Jail
and this inmate Claude Carter was telling me that he was in jail
for drugs, and if he did not tell on Dion Savage that they was
going to give him 20 years.

4.  Mr. Carter informed your affiant that Mr. Savage was like a
big brother to him and he (Mr. Carter) did not want to lie on Mr.
Savage, but he can't do 20 years.

5.  Mr. Carter informed your affaint that an officer name Harlon
Green kept coming to see him (Mr. Carter),and telling him that he
was going to go down if he don't do what he say.

6.  Mr. Carter informed your affiant that the deal was for 7½ years
if he say that Dion Savage gave him the drugs.

7.  That your affiant kept telling Mr. Carter to face his own
music, and that is, to tell the truth that Mr. Savage was not
giving him the drugs.  But Mr. Carter was very affraid of Mr. Green

"C"

and the 7½ year deal was the only deal that he was going to get.

8.   That your affaint and Mr. Carter talked about his case almost ever night until Mr. Carter got into a fight one night and the guards moved him to another cell.

9.   That later in the year of 1997 they moved your affiant to Milan Michigan, Detention Center and they put me in the same cell with Mr. Carter, and I asked Mr. Carter what happened, and he told me that he did what they (Flint Police Department) asked of him, but he felt very bad about what he said at Mr. Savage's trial.

10.   That Mr. Carter started getting mad at your affiant because I knew what he (Mr. Carter) had done pertaining to giving false testimony against Mr. Savage at Mr. Savage's trial. But I told him that was his own business. So about the sixth day I was there an officer came to the cell and told me that I was going back to court. Now at this time Mr. Carter got very angry, and told his buddy a Mr. Youngblood to watch the door because he was going to kick my ass before I leave to make sure that I would not tell anyone.

11.   That Mr. Carter hit me and that was a big mistake, because he lost the fight big time.

12.   That your affiant left and went back to court, and when I got back from court to Milan Detention Center, I was put in the hole for fighting.

13.   That your affiant talked to a Lt. Sherman and told him the truth, and went and got Mr. Carter and put him in the hole too.

And Lt. Sherman told me that he knew Mr. Carter was lying to him, because Mr. Carter told him that about three people had beat him up.

14.  That while your affiant was in SHU with Mr. Carter, I told him that I would not say a word until I found out that I could get into trouble if I was aware of a crime and did not say anything about it.

15.  That your affaint was locked up at FCI Cumberland and I would see Dion Savage everyday knowing that Mr. Carter had testified falsely on Mr. Savage at Mr. Savage's trial and landed Mr. Savage in priosn with a life sentence, and I know that Mr. Savage should not be in prison, so I am coming forth to tell the truth, and I feel that someone should do something about this, because I have heard that Mr. Savage does not want to live, because the law have been unfair to him, and that is no way for anyone to live the rest of their life out.

16.  That your affiant knows that Mr. Carter lied on Mr. Savage at Mr. Savage's trial and Kerry Jerome Youngblood also knows that Mr. Carter committed perjury at Mr. Savage's trial.

    FURTHER, AFFIANT SAYETH NOT.

Dated: 6-22-04

ZACKERY FRANKLIN, Affiant

Subscribed and sworn to before me,
this 22 day of June 2004.

NOTARY PUBLIC

MY COMMISSION EXPIRES: 12-18-2005

SHEILAH C. OLIVO
NOTARY PUBLIC – MICHIGAN
GENESEE COUNTY
MY COMMISSION EXPIRES DEC. 18, 2005

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

UNITED STATES OF AMERICA
        Plaintiff

CRIM. CASE NO: 95-56001

vs.


DION ERIC SAVAGE
        Defendant

---

## AFFIDAVIT OF CLAUDE LEON CARTER

Now comes Claude Leon Carter and after being duly sworn, deposes and declares as follows:

1. That I am the person giving this Affidavit and am of sound mind.


2. That I am familiar with Dion Savage, Zackary Franklin, Cedric Simpson, Kerry Jerome Youngblood, Melvin Mann, Daniel Jarett, Laquisha Savage and Dion Savage II.


3. That in the winter of 1997, after I was arrested for absconding, I was housed in Shiawassee County Jail with Zackary Franklin, Kerry Youngblood and Daniel Jarett. And that while I was housed with the aforementioned individuals, I spoke to all of them, but more so to Zackary Franklin and Kerry Youngblood, that contrary to , my coerced testimony I gave at Dion Savages trial, Dion Savage did not deal drugs, nor was he part of a drug conspiracy.


4. That during the time of this case, Mark Jones, Lt. Koger informed me if I didn't testify for the government and against Dion Savage and other co-defendants I would be looking at 27-30 years or if I testify favorably I was able to get a reduced sentence.



5.     That I told Dion Savage on or about the month of December (1995) or January or February (1996), that I was called down to the federal building and when I got down there, I was called into a room where my attorney (Wallace Capel), Lt. Koger, Mark Jones and (2) IRS agents were. That they were trying to get me to say things about Dion Savage, dealing in drugs that were not true. I told Dion Savage that I was going to take the witness stand and tell the jury that they were trying to get me to say that he (Dion Savage) was involved in selling drugs.

6.     That I was coerced by the Flint Police to give false testimony against Dion Savage and if I did not testify falsely against Dion, not only did I fear for my life, but also I was told I would get 20 years in prison if I did not testify as Lt. Koger and Officer Green wanted. I categorically state that Dion Savage is not a drug dealer, nor was he involved in a drug conspiracy as I falsely testified at his trial. Nor did I sell any drugs at Dion's Party Store, Dion's Mini Market II or at Phil's Party Store, at the behest of Dion Savage, nor did he have any knowledge of drugs being sold, nor did I sell drugs for food stamps, as I testified to at his trial.

7.     That I wrote Kerry Youngblood a letter while I was in the Special Housing Unit as to the fight and other things for him to do to get home early. This letter was dated September 1, 1997.

8.     This is why I absconded, not because I was afraid of Dion Savage, as I was coerced into testifying at the detention hearing on March 13, 1997, nor did I sign the Affidavit that was used to revoke Dion Savages bond, but because I did not want to falsely against Dion, nor did I want to be killed or go to prison for 20 years.

9.     That on or about July 24, 2005 I wrote Dion Savage at USP Big Sandy and asked him to call me, which he did on August 4, 2005. That on or about August 14, 2005 I wrote Dion Savage at USP Big Sandy a follow up letter to the conversation we had on August 4, 2005.

10.     That on April 1, 2006 I ran into Laquisha Savage on Russel Avenue and she asked me why I lied on her father. I told her that if I did not Koger and Green was going to send me to prison for 20 years. And that after Barbara Savage hired me in November or December of 1995, Dion told me in front of Laquisha to stop selling drugs because I have a job now, that when I am out there selling drugs, I am not only risking my life, but my daughters life also.

11.     That in the month of September or October of 2007, after Dion Savage II continuously tried to get me to sign an Affidavit; I called his cell phone several times early in the morning and left several candid, sincere and truthful message on his voice mail. That is why I was up early in the morning riding around and calling Dion Savage II cell phone. I was coerced by the Flint Police to testify falsely against Dion Savage at his trial and the March 13, 1997 detention hearing. Dion is not a drug dealer as I have told and confided in several people and as I categorically asserted on the voice mail of his son's cell phone and in the letter of August 2005 I wrote Dion.

12.     What I am offering now is what I offered in 1995 and was ignored and rejected. I am tired of carrying the thoughts of testifying against Dion Savage, which has landed him in prison with a life sentence. I was coerced to testify falsely on Dion Savage at his trial and at the dentition hearing; Dion is not a drug sealer, and I will testify to the contents of this Affidavit in court.


                                        _Claude Carter_____
                                        Claude Leon Carter, Affiant


Further, Affiant sayeth not.


Dated: _5/11/2013_____


Subscribed and sworn to before me, this 11th day of May, 2013.

_Kelly Norman_____
Kelly Norman, Notary Public

In the County of Ingham, Michigan.
My commission expires: 5/5/2014

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,

v.

DION ERIC SAVAGE,

                Defendant.

CRIM. CASE NO: 95-50061

HONORABLE BERNARD A. FRIEDMAN
U.S. DISTRICT JUDGE

_____/

## AFFIDAVIT OF RODERICK MOON

Now Comes Roderick Moon, and after being duly sworn, deposes and says pursuant to 28 U.S.C. § 1746 under the penalty of perjury the following:

(1)  That I am the person providing this Affidavit and am of sound mind.

(2)  That I am familiar with Dion Savage and Joy Anderson.

(3)  That in the early part of 1996, after Phil Walker could no longer afford to pay me for working at his store (Phils' Party Store), Dion Savage hired me to work at Dion's Mini Mkt II on Welch Blvd., Flint, Mich. My job detail was to keep the coolers clean and filled, keep the floors cleaned, sort out the bottle returns, take the trash out and make sure no one stole or disrupted the business.

(4)  That on October 16, 1996 an incident occurred at Dion's Mini Mkt II and as a result of this incident I was arrested and convicted of Mich. Comp. Laws § 750.316(a)(1), § 750.83 & 750.227b.  See Moon v. Luma, 2007 U.S. Dist. LEXIS 63653 (E.D.Mich. 2007).

(5)  That on or about March 20, 1997 Joy Anderson and Dion Savage were called/subpoenaed to testify at my trial.  See Moon, supra.

(6)  That after I was found guilty on the above charges I wanted revenge as to Dion Savage, who provided the Flint Police with the tape recording that was used against me at my trial and for stating that there was a gun in my hand on the tape recording.  And as to

"C"

Joy Anderson for testifying against me.  I came to the trial of
Dion Savage and Mark Anderson, who is the brother of Joy Anderson,
and blatantly testifed falsely against the both of them.  I
categorically assert that Dion Savage is not a drug dealer and
what I testified to at his trial as to him being involved in drugs
was a complete lie.  I use to work from 5:00 p.m. until 2:00 a.m.
6 to 7 days a week at Dion's Mini Mkt II.  And when I got to the
store Dion Savage, contrary to my trial testimony, was never
there because he use to leave the store at 2:00 p.m. every day and
Joy Anderson use to work from 2:00 p.m. unitl 2:00 a.m. 7 days a
week.  I never saw Dion Savage and Mark Anderson in the back of
Dion's Mini Mkt II doing any drug transactions as I falsely
trstified to at the trial of Dion & Mark.  Nor did I ever hear Dion
talking about having anything or knowledge of the killing of Dave
Strickland, as I falsely testified to at the trial of Dion Savage.
I never walked in on Dion & Mark Anderson doing a drug transaction
in the back of the store, nor did I see Dion Savage with bags of
cocaine or money as I blatantly lied at his trial.

(7)  That Lt. Koger knew, among other things, that I was lying on
Dion Savage when I testified at his trial as to Dion being invloved
in drugs.

(8)  I, Roderick Moon, unequivocally and categorically assert that
everything I testified to as to Dion Savage and Mark Anderson
dealing in drugs at Dion's Mini Mkt II was a complete lie.  And
what I testified to as to Dave Strickland was also a complete lie.
I have nothing to gain by signing this Affidavit, nor was I coerced
or threatened by anyone to sign this candid and truthful Affidavit.
I am doing it because it is the right thing to do and I want this
sin off of my Conscience.

(9)  That I am willing to come before any court and truthfully
testify to the contents of this Affidavit.

        FURTHER, THE AFFIANT SAYETH NOT.

Subscribed and sworn to before me,
this day 19ᵀᴴ of August of 2013.

                                    _S. Man_____
                                    Affiant Roderick Moon


_Ro Sutherl_____
Notary Public                       MY COMMISSION EXPIRES:


ROBERT SUTHERLAND, Notary Public
   State of Michigan
   County of Clinton
My Commission Expires Dec. 10, 2016
Acting in the County of ___Ionia___

                      -2-

UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | APPEALS NO. 04-1913 |
| v. | ) | |
| DION ERIC SAVAGE, | ) | |
| Defendant-Appellant. | ) | |

AFFIDAVIT OF LAQUISHA SHANTE SAVAGE

Now Comes Affiant, Laquisha Shante Savage, and after being duly sworn, deposes and says as follows:

1. That I am the person giving this Affidavit, and I am familar with Claude Carter.

2. That in the year of 1996 and the month of February while my father was still confined to a wheelchair we were up at Dion's P/S, and I was present when my father was talking to Claude Carter and I heard my fahter tell Mr. Carter that: "You have a job now stop selling drugs that when you are out there seling drugs you are not only risking your life but the life of your daughter"

3. That I know that Mr. Carter lied on my father when he testified that my father was dealing drugs with him. My father would pick me up from school everyday, and I would go back to the Store on Welch Blvd (Dion's Mini Mkt II) until my mother would pick me up and take us home. And after my father got home from workingout, he would always take us Fourwheeling riding or to the movies or we would just stay at home and watch movies or play NBA Jamm or Street fighter in the basement. My father is not a drug dealer.

FURTHER, AFFIANT SAYETH NOT.

Date 12-15-04

Laquisha Shante Savage, Affiant

Subscribed and sworn to before me,
this 15th day of ~~October~~ 2004.
December

Notary Public

MY COMMISSION EXPIRES:

MONICA HAMPTON
Notary Public, Genesee County, MI
My Commission Expires Jun. 21, 2008





"C"

(6)

Aug/14/03

Dion

You talk real good, and you talk for your Roy, in behalf of your Roy I must admit you sound real good. Well I want to say that "Pengelly" was a Selective address carefully chosen to let you correspond to me, but also to let

me determine if you were trying to make me look at some of your Known peoples addresses, like a Decoy (in)

involved with a white Federal agent who gave me instruments in Contactesing you in case of any kind of retaliation

by you, but I was genuinely trying to talk to you involving some dollars like I initially did. Kristen Sugar Coat

it, fit it any way you like, you took the stand testified against me & help put him away I read the crea

⑥

gonna except that, you fired me &
hung me out to dry, the others were
Casualties of war, you should of sided
with me. Now the Feds is due put a
fork in him. I tried to rationalize, you
innocent" never you put people in
jail, once a innocent man even &
called the police on marty, you are
no stranger to testifying, Remember at
Habrahs Market you testified on marty
I wanted to negotiate but you are
an arrogant person not even in a
early death will I admit being wrong
Let Death come by you or any hand
I came up against you & you lost, you
had a chance, I wasn't gonna bring
the noise but you & your selfish ways
Did that, you say your innocent of
this Crime of Conspiracy involving me

I didn't do any thing during that time
every thing that happened, you were the
target of a drug probe, people were slated
with you but you were innocent so
they were to make up, & if you lost
Barb you never had her, you just counted
her, because now she is free. I didn't
do this I just Didn't let you do me
Did you loose a Jeg in a Jetsking incident
if you Did bad luck is just riding
you. I was gonna tell you how to
ease the pain, but you are still so

~~###~~ Pig headed So I will let you
go & won't contact you again

PS Marty was the reason & Phil put
him up to it because he knew in advance

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DION ERIC SAVAGE,

Petitioner,

v.

UNITED STATES OF AMERICA,

Respondent.

_____/

CRIM. CASE NO: 95-56001

HONORABLE PAUL V. GADOLA
U.S. DISTRICT JUDGE

## AFFIDAVIT OF CLAUDE LEON CARTER

**Now Comes** Claude Carter and after being duly sworn, deposes and declares as follows:

(1)  That I am the person giving this Affidavit and an of sound mind.

(2)  That I am familiar with Dion Savage, Zackary Franklin, Cedric Simpson, Kerry Jerome, Melvin Mann Youngblood, Daniel Jarrett and Laquisha Savage.

(3)  That in the winter of 1997, I was being housed in Shiawassee County Jail with Zackary Franklin, Kerry Youngblood, Cedric Simpson, Daniel Jarrett and Melvin Mann. And that while I was housed with the aforementioned individuals, I confided in all of them, but more to Zackary Franklin and Kerry Youngblood, that Dion Savage did not deal drugs, nor was he part of a drug conspiracy.

(4)  That in the summer of 1997 I was sent to Milan Detention Center, and was the cellmate of Zackary Franklin, and I confided in him back in the early part of 1997 while we were housed in Shiawassee County Jail that my deal was for 7 and a half years, if I say that Dion Savage was giving me drugs. Mr. Franklin asked me what happened in court and I told him that I had said things about Dion Savage that were not true and that I felt very bad, but the 7and a half years was the only deal I was going to get and that I could not do 20yrs, as Harlan Green told me I would do unless I testify as they wanted me to.

(5)  That I told Dion Savage on or about in the month of December(1995) or January or February of 1996, that I was called down to the federal building and when I got down there, I was called into a room where my attorney (Wallace Capel), Lt. Koger, Mark Jones and (2) IRS Agents were.  That they were trying to get me to say things about him (Dion) that were not true.

"C"

(6)  That I was coerced by the Flint Police to give false testimony against Dion Savage and if I did not testify falsely against Dion, not only did I fear for my life, but also I was told that I would get 20yrs in prison if I did not testify as Lt. Koger and Officer Green wanted.  I categorically state that Dion Savage is not a drug dealer, nor was he involved in a drug conspiracy as I falsely testified at his trial, nor did I sell any drugs at Dion's Party Store, Dion's Mini Mkt II or Phil's Party Store, at the behest of Dion Savage, nor did he have any knowledge of drugs being sold, nor did I sell drugs for food stamps, as I testified to at his trial.

(7)  This is why I absconded, not because I was afraid of Dion, as I was coerced into testifying at the detention hearing on March 13, 1997, nor did I sign the affidavit that was used to revoke Dion's bond, but because I did not want to testify falsely against Dion, nor did I want to be killed or go to prison for 20yrs.

(8)  That on April 1, 2006 I ran into Laquisha Savage on Russell Avenue and she asked me why did I lie on her father.  I told her that if I did not Koger and Green was going to send me to prison for 20yrs.  I told her that I feared for retaliation from Dion's family, but Laquisha told me that she was going to let God handle it.  And that after Barbara hired me in November or December of 1995, when nobody else would, Dion told me in front of Laquisha to stop selling drugs because I have a job now, that when I am out there selling drugs, I am not only risking my life, but my daughter's life also.

(9)  I have found God/Christ now, so I am coming forth to tell the truth.  I am tired of carrying this great sin within me of lying on Dion Savage, which has landed him in prison with a life sentence.  I testified falsely on Dion Savage at his trial and at the detention hearing; he (Dion) is not a drug dealer, and I will testify to the contents of this Affidavit in Court, so held me God.

FURTHER, THE AFFIANT SAYETH NOT.
Subscribed and sworn to before me,
this day ____ of August, 2007.

_____
Claude Leon Carter, Affiant

_____
Notary Public

MY COMMISSION EXPIRES:

## Page 1

**Department of Justice**
**INMATE SKILLS DEVELOPMENT PLAN**

Federal Bureau of Prisons
**Current Progress Report: 02-14-2015**

| Name: | SAVAGE, DION ERIC | Institution: | PEKIN FCI |
| Register Number: | 19704-039 | | P.O. BOX 7000 |
| Security/Custody: | MEDIUM/IN | | PEKIN, IL 61555 |
| Projected Release: | / LIFE | Telephone: | (309) 346-8588 |

| Next Review Date: | 03-02-2015 | Driver's License/State: | None / MI |
| Next Custody Review Date: | 02-02-2015 | FBI Number: | 114157D81 |
| ApplicDBSPmc: | 51/01/26-1964 / M | SSN: | 372989282 |
| CIM Status: | Y | DC/DC Number: | |
| | If yes, reconciled: Y | INS Number: | |
| | | PND Number: | |
| | | Other IDs: | |

**Release Residence:** Albert Savage, Father
4208 TRUMBULL AVE
FLINT, MI 48504
(810) 640-1402

**Telephone:** (810) 306-5074

**Primary Emergency Contact:** Barbara Savage, Spouse
6317 E. Alma
FLINT, MI 48505
(810) 306-5074

**Mentor Information:**

**Release Employer:**
Contact:
Telephone:

Secondary Emergency
Contact:
Telephone:

(Name)
(Address)
(POC)

(Name)
(Address)
(POC)

**Controlling Sentence Information:**

| Controlling Charge/Offense: | | | |
| 21:848 CONTINUING CRIMINAL ENTERPRISE | LIFE | 3559 PLRA SENTENCE | 5 YEARS |

**Other Current Offenses:**

NONE

**Mentor Information:**

| Detainers: | N | | | | |
| 10-21-1997 | 1Y YEARS / MONTHS 23 DAYS / 116 / 0 | 0 / 0 / 0 | 0 / 0 / 0 | NOT ENTERED | NOT ENTERED |

**Special Parole Term:** NOT ENTERED
**Pending Charges:** Y None known)
**Cim Status:** N

Cim Reconciled: Y

| ASSESSMENT USDC | | FINANCIAL | |
| FINE COMBINED USDC | $25000.00 | CR 95-CR-50061-01-FL | RESP-COMPLETED |

**Financial Plan**
**Active:** N
**Financial Plan Date:** (Date)

| | $100.00 | $0.00 | |
| Comm Dep-6 mos.: | (3) | | |
| Commissary: | $0.00 | | |
| Balance: | (3) | | |

**Payments**
**Commensurate:** [Y,N]
**Missed:** [Y,N]

Page 1

ISDS Version: 1.6.2d

Generated: 02-14-2015 14:26:18

## Page 2

**Department of Justice**
**INMATE SKILLS DEVELOPMENT PLAN**

Federal Bureau of Prisons
**PROGRESS REPORT: 02-14-2015**

**Judicial Recommendation:** None / None / None

**Special Conditions of**
**Supervision:** Refer to J&C.

**USPO** Philip, Miller, Chief
**Sentencing:** Michigan Eastern Probation Office
Theodore Levin United States Courthouse
231 West Lafayette Boulevard Room 901
Detroit, MI 48226
**Phone/Fax:** 313-234-5400 / 313-234-5390

**USPO** (POC)
**Relocation:** (District)
(Street Address/Suite)
(City), (State) (Zip)
**Phone/Fax:** (Phone) / (Fax)

Subject to 18 U.S.C. 4042(B) Notification:
• Past conviction for a crime of violence (state and federal)
• Conviction for a drug trafficking crime (federal)    Y

**DNA Required:** Y
**Subject to Sex Offender Notifications:** Y / (Date)
**Treaty Transfer Case:** [Y,N]

**Profile Comments:**

| PEK | GED HAS | | COMPLETED GED OR HS DIPLOMA | 11-10-1998 | CURRENT |
| PEK | ESL HAS | | ENGLISH PROFICIENT | 07-07-1998 | CURRENT |

| MOCK JOB FAIR PREP CLASS | | | | 05-20-2011 | 2 |
| JOB FAIR INTERVIEW | | | | 05-20-2011 | 2 |
| RPP#6 RELEASE PREP PROG A&O | | | | 01-19-2011 | 2 |
| RPP#5EMPLOYABILITY/R07:30/LOTT | | | | 08-23-2007 | 2 |
| RPP2/EMPLOYABILITY/R07:30/LOTT | | | | 08-23-2007 | 2 |
| RPP3/FINANCE/R0/900/LOTT | | | | 08-23-2007 | 2 |
| REENTRY/CCM/6/SS FAIR | | | | 08-24-2007 | 8 |
| A.R.P.JOB SKILLS SURVEY | | | | 04-15-2004 | 8 |
| COMPUTER LAB ORIENTATION | | | | 04-08-2004 | 1 |
| CD LAW LIB ORIENTATION | | | | 01-09-2004 | 1 |
| F.CAL.I II | | | | 06-21-2002 | 22 |
| CAL 3 | | | | 04-23-2002 | 18 |
| A.M. CAL2 | | | | 11-30-2001 | 14 |
| A.M. CAL | | | | 09-15-2001 | 15 |
| REC HATHA YOGO PROGRAM | | | | 02-14-2001 | 12 |
| YOGA FOR BACK PAIN | | | | 01-05-2001 | 1 |
| BASIC CARTOONING | | | | 12-15-2000 | 15 |
| INCARCERATED MARRIAGES | | | | 12-15-2000 | 15 |

Page 2

ISDS Version: 1.6.2d

Generated: 02-14-2015 14:26:18

Name: SAVAGE, DION ERIC   RegNo: 19734-039

| | Course | | | | | Date Begin | Date End | | Status |
|---|---|---|---|---|---|---|---|---|---|
| PARENTING 2 | | | | | | 09-26-2000 | 16 | | |
| MASTER ABS CLASS | | | | | | 07-29-2000 | 33 | | |
| ABDOMINAL DEVELOPMENT CLASS | | | | | | 02-24-2000 | 24 | | |
| AFRICAN AMERICAN HISTORY | | | | | | 02-17-2000 | 4 | | |
| ABLE | | VOCABULARY | 9.30 | 10-08-1998 | CUM | E | | | |
| ABLE | | SPELLING | 8.80 | 10-08-1998 | CUM | E | | | |
| ABLE | | READ COMP | 12.90 | 10-08-1998 | CUM | E | | | |
| ABLE | | PROB SOLV | 12.00 | 10-08-1998 | CUM | E | | | |
| ABLE | | NUMBER OPR | 8.50 | 10-08-1998 | CUM | E | | | |
| ABLE | | LANGUAGE | 3.70 | 10-08-1998 | CUM | E | | | |

| | Assignment | Description | Begin | End |
|---|---|---|---|---|
| PEK | EDUC EVE | EDUC EVE ORD 5:00-8:30 P.M. | 06-15-2011 | CURRENT |
| PEK | EDUC EVE | EDUC EVE ORD 5:00-8:30 P.M. | 04-05-2011 | 06-15-2011 |
| PEK | EDUC AM | EDUC EVE ORD 7:45-11:30 A.M. | 04-04-2011 | 04-05-2011 |
| MAN | UNT-RECYCL | UNIT RECYCLE CREW | 02-10-2011 | 03-14-2011 |
| MAN | RECYCLE | RECYCLING CREW | 01-21-2011 | 02-10-2011 |
| MCR | COMPO WKND | COMPOUND ORDERLY - WEEKEND | 01-20-2010 | 01-10-2011 |
| MCR | ORD 5A AM | UNIT 5A ORDERLY AM | 08-25-2009 | 12-30-2009 |
| MCR | ORD 5A PM | UNIT 5A ORDERLY PM | 03-25-2008 | 08-25-2009 |
| MCR | ORD 5B PM | UNIT 5B ORDERLY PM | 11-15-2008 | 03-25-2009 |
| MCR | COMPO AM | COMPOUND ORDERLY - WEEKEND | 11-14-2007 | 11-15-2007 |
| MCR | COMPO AM | AM COMPOUND ORDERLY | 11-06-2007 | 11-14-2007 |
| BSY | A2 ORD | A2 UNIT ORDERLY | 12-06-2004 | 10-31-2007 |
| BSY | DETN | DETENTION | 11-19-2004 | 12-06-2004 |
| BSY | A2 ORD | A2 UNIT ORDERLY | 05-11-2004 | 11-19-2004 |
| BSY | A1 ORD | A1 UNIT ORDERLY | 02-24-2004 | 05-11-2004 |
| BSY | C2 ORD | C2 UNIT ORDERLY | 01-13-2004 | 02-24-2004 |
| BSY | DETN | DETENTION | 12-18-2003 | 01-13-2004 |

---

Department of Justice   Federal Bureau of Prisons

# INNATE SKILLS DEVELOPMENT PLAN   PROGRESS REPORT: 02-14-2015

| | Code | Description | Begin | End |
|---|---|---|---|---|
| CUM | F CCS AM | FCI CUSTODY A.M. | 06-19-2002 | 10-02-2003 |
| CUM | F CCS PM | FCI CUSTODY P.M. | 03-05-2001 | 06-19-2002 |
| CUM | F CCS AM | FCI CUSTODY A.M. | 03-05-2001 | 03-06-2001 |
| CUM | F DINRM PM | FCI DINING ROOM PM | 02-17-2001 | 03-05-2001 |
| CUM | F FS AO | FOOD SVC A AND O | 02-12-2001 | 02-17-2001 |
| CUM | F B1 ORD | FCI B1 ORDERLY | 01-20-1999 | 02-12-2001 |
| CUM | F DINRM PM | FCI DINING ROOM PM | 01-05-1999 | 01-20-1999 |
| CUM | F LAUNDRY | FCI LAUNDRY | 04-23-1998 | 01-05-1999 |
| CUM | F DINRM PM | FCI DINING ROOM PM | 04-06-1998 | 04-23-1998 |

| | Date | Number | Description | | |
|---|---|---|---|---|---|
| UDC | 06-30-2003 | 1117294 | 307 - REFUSING TO OBEY AN ORDER | | |
| DHO | 08-28-2002 | 1021035 | 297 - PHONE ABUSE-DISRUPT MONITORING | | |
| UDC | 03-02-1999 | 660716 | 406 - USING PHONE OR MAIL W/O AUTH | | |
| UDC | 01-17-1998 | 554237 | 406 - USING PHONE OR MAIL W/O AUTH | | |

| | Code | Description | Begin | End |
|---|---|---|---|---|
| PEK | A-DES | DESIGNATED, AT ASSIGNED FACIL | 06-15-2011 | CURRENT |
| PEK | | DESIGNATED, AT ASSIGNED FACIL | 03-24-2011 | 06-15-2011 |
| MAN | | DESIGNATED, AT ASSIGNED FACIL | 02-07-2011 | 03-14-2011 |
| MAN | | "MULTIPLE TRIPS IN/OUT OF MAN | 01-10-2011 | 02-07-2011 |
| MCR | | DESIGNATED, AT ASSIGNED FACIL | 05-01-2009 | 01-10-2011 |
| MCR | | "MULTIPLE TRIPS IN/OUT OF MCR | 10-31-2007 | 05-01-2009 |
| BSY | | DESIGNATED, AT ASSIGNED FACIL | 12-17-2003 | 10-31-2007 |
| CUM | | DESIGNATED, AT ASSIGNED FACIL | 03-30-1998 | 11-10-2003 |

| | Code | Description | Begin | End |
|---|---|---|---|---|
| PEK | RPP INELIG | RELEASE PREP PGM NEGLIGIBLE | 01-21-2011 | CURRENT |



Name: SAVAGE, DION ERIC
RegNo: 19734-039

| PEK | V94 PV | V94 PAST VIOLENCE | 04-08-1998 | CURRENT |
| PEK | V94 CDA913 | V94 CURR DRG TRAF ON/AFT 91994 | 04-08-1998 | CURRENT |
| PEK | WGT 20 LB | WEIGHT-NO LIFTING OVER 20 LBS | 06-15-2011 | CURRENT |
| PEK | STAND RSTR | NO PROLONGED STANDING | 06-15-2011 | CURRENT |
| PEK | REG DUTY W | REGULAR DUTY W/MED RESTRICTION | 06-15-2011 | CURRENT |
| PEK | ATH RESTR | NO SPORTS/NO WEIGHT LIFTING | 06-15-2011 | CURRENT |
| PEK | YES F/S | CLEARED FOR FOOD SERVICE | 01-11-2011 | CURRENT |



Department of Justice — Federal Bureau of Prisons

**INMATE SKILLS DEVELOPMENT PLAN**    **PROGRESS REPORT: 02-14-2015**

*** Disregard Response Summary and utilize only the Progress & Goals section ***

**ACADEMIC**

**INTELLECTUAL FUNCTIONING**
- no intellectual deficits
- has NOT attended special education classes

**LITERACY**
- high school diploma obtained
- Not all test results passing

**LANGUAGE**
- fluent in English as primary language

**COMPUTER SKILLS**
- possesses keyboarding skills
- possesses word processing skills
- possesses internet navigation skills

No deficiencies-No recommendations

**VOCATIONAL/CAREER** *** Disregard Response Summary and utilize only the Progress & Goals section ***

**EMPLOYMENT HISTORY**
- unemployed at time of arrest
- no consistent history of employment 5 years prior to incarceration
- sporadic history of employment (frequent, non-promotional job changes)

**CAREER DEVELOPMENT**
- does not possess significant expertise in field

**CAREER DEVELOPMENT**
- no realistic career/job goals upon release

**INSTITUTION WORK HISTORY**
- has a consistent institution work history
  - Eval: 02-18-2014 Good
  - Eval: 01-30-2014 Good
  - Eval: 12-30-2013 Good
  - Eval: 11-30-2013 Good
  - Eval: 10-30-2013 Good
  - Eval: 09-30-2013 Good

**POST INCARCERATION EMPLOYMENT**
- post-incarceration employment not secured
- other: Savage has a life sentence and is not expected to release.
- no release documents obtained to date

Name: SAVAGE, DION ERIC                                                                 RegNo: 19734-039

**VOCATIONAL/CAREER**      *** Disregard Response Summary and utilize only the Progress & Goals section ***

  Completed Mock Job Fair Preparation and Job Fair Interview.

**INTERPERSONAL**      *** Disregard Response Summary and utilize only the Progress & Goals section ***

**RELATIONSHIPS**
- no adverse life experiences
- no negative peer influences prior to incarceration

**FAMILY TIES/SUPPORT SYSTEM**
- consistent social support available
  - Spouse: Emotional
  - Spouse: Emotional
  - Immediate Family: Financial
  - Immediate Family: Emotional
  - Immediate Family: General
  - Immediate Family: General
- no negative peer influences prior to incarceration

**PARENTAL RESPONSIBILITY**
- no children under the age of 21
- no children under the age of 21 financially responsible for
- RRC (MINT) Placement is not applicable

**COMMUNICATION**
- displays good communication skills
- Has maintained contact with family/friends past 6 months

---



Department of Justice                                    Federal Bureau of Prisons
**INMATE SKILLS DEVELOPMENT PLAN**      **PROGRESS REPORT: 02-14-2015**

**WELLNESS**      *** Disregard Response Summary and utilize only the Progress & Goals section ***

**HEALTH PROMO/DISEASE PREVENT**
- overweight
- height 6 ft. 0 in.
- weight (lbs.) 280
- BMI Score 35.5
- date calculated 03-25-2011
- maintains physical fitness thru regular exercise;
- aerobic exercise
- anaerobic or isometric exercise
- evidence of behaviors associated with increased risk of infectious disease
- tattoo, body piercing (in unsanitary settings)
- does not use tobacco (cigarettes, cigars, and/or smokeless tobacco)
- had a primary care provider or clinic (prior to incarceration)
- does not have health insurance coverage upon release

**DISEASE/ILLNESS MANAGEMENT**
- complies with treatment recommendations and/or takes medications as prescribed, or none required
- medical Care Level II (Chronic care - stable) - See Exit Summary
- no dental problems
- no non-routine services/assistance devices needed

**TRANSITIONAL PLAN**
- requires medication upon release from custody - See Exit Summary
- requires on-going treatment or follow-up after release from custody - See Exit Summary
- TB Clearance Complete - See Exit Summary
- health Services recommends for RRC placement

**GOVERNMENT ASSISTANCE**
- has not previously received Social Security assistance
- inmate indicates he/she may not be eligible for Social Security assistance after release
- has not served in the U.S. Armed Forces, AND/OR U.S. National Guard
- spouse or a parent has not served in the U.S. Armed Forces, U.S. Military Reserves, AND/OR U.S. National Guard

Continue to recommend Participate in a regular wellness program that includes exercising at least 3x weekly in order to promote positive mental and physical health.

Name: SAVAGE, DION ERIC

RegNo: 19734-039

## MENTAL HEALTH   *** Disregard Response Summary and utilize only the Progress & Goals section ***

### SUBSTANCE ABUSE MANAGEMENT
- no evidence of inappropriate use of alcohol, prescription medications and/or illegal drugs in the year prior to arrest
- no history of substance abuse treatment
- not currently participating in substance abuse treatment

### MENTAL ILLNESS MANAGEMENT
- no history of mental health diagnosis prior to incarceration
- no mental health diagnosis during incarceration
- no history of serious suicidal ideation or attempts

### TRANSITIONAL PLAN
No recommendations being made in this area at this time.

### APPROPRIATE SEXUAL BEHAVIOR
- no evidence of sexually inappropriate behavior reported or observed
- details: Displays stalking type behaviors of female staff members.

## COGNITIVE

### GENERAL BEHAVIOR   *** Disregard Response Summary and utilize only the Progress & Goals section ***
- no evidence of behavioral problems as a juvenile
- evidence of behavioral problems as an adult

### CRIMINAL HISTORY
- 300 series incident reports
- 200 series incident reports
- 400 series incident reports
- two or more convictions
  assaults: Single occurrence(s)
  other (Attempted Larceny): Single occurrence(s)

### DOMESTIC VIOLENCE/ABUSE
- no history of domestic violence or abuse

### CRIMINAL BEHAVIOR
- no onset of criminal behavior before the age of 14
- no criminal versatility: Convictions in less than 3 categories
- no significant history of violence: Less than 2 violent convictions

Department of Justice

Federal Bureau of Prisons

## INMATE SKILLS DEVELOPMENT PLAN     PROGRESS REPORT: 02-14-2015

### COGNITIVE   *** Disregard Response Summary and utilize only the Progress & Goals section ***
Continue to Maintain clear conduct with no incident reports

### CHARACTER   *** Disregard Response Summary and utilize only the Progress & Goals section ***

#### PERSONAL CHARACTER
- insufficient variety of behaviors to warrant overall positive personal character
- evidence of spirituality
  talks to a friend or mentor about spiritual/religious issues: Sometimes
  active participation in a faith group: Sometimes
  connected to outside spiritual/religious community: Sometimes
  examines actions to see if they reflect values: Sometimes
  finds meaning in times of hardship: Sometimes
- religious assignment: NATION
- no evidence easily influenced by other

#### PERSONAL RESPONSIBILITY
- reports responsibility for current incarceration as:
- government corruption
- law enforcement corruption
- no efforts to make amends for their crime(s)

No recommendations being made in this area at this time.

## LEISURE

### USE OF LEISURE TIME   *** Disregard Response Summary and utilize only the Progress & Goals section ***
- activities indicative of positive use of leisure time:
- family time
- sports/exercise
- movies/television/music
- reading
- library
- park/recreation facilities

No deficiencies-No recommendations

Name: SAVAGE, DION ERIC                                  RegNo: 19734-039

Department of Justice
Federal Bureau of Prisons
**INMATE SKILLS DEVELOPMENT PLAN**
**PROGRESS REPORT: 02-14-2015**

**DAILY LIVING**       *** Disregard Response Summary and utilize only the Progress & Goals section ***

**DAILY LIVING**       *** Disregard Response Summary and utilize only the Progress & Goals section ***

**FINANCIAL MANAGEMENT**
- ⊕ knowledge in maintaining checking account
- ⊕ knowledge in maintaining savings account
- ⊕ no knowledge in utilizing an ATM debit card
- ⊕ knowledge in obtaining loans
- ⊕ has an established positive credit history
- ⊕ lived within financial means
- ⊕ pays monthly bills on time

**FOOD MANAGEMENT**
- ⊕ possesses grocery shopping/consumer skills
- ⊕ makes good nutritional choices to maintain health
- ⊕ possesses basic food preparation skills
- ⊕ no knowledge in accessing community resources to obtain food

**PERSONAL HYGIENE/SANITATION**
- ⊘ good personal hygiene and sanitation
- ⊘ quarters assignment: HOUSE E/RANGE 02/BED 208L

**TRANSPORTATION**
- ⊕ does not have valid driver's license
- ⊕ No outstanding motor vehicle violations
- ⊕ does not own personal vehicle with appropriate insurance
- ⊕ possesses public transportation skills and has access to public transportation

**IDENTIFICATION**
- ⊕ does not have photo identification
- ⊕ does not have birth certificate
- ⊕ has social security card

**HOUSING**
- ⊕ established housing year prior to incarceration
- ⊕ established housing owned or mortgage
- ⊕ established housing lived with family
- ⊕ established housing non-publicly assisted
- ⊕ established housing not in a high crime neighborhood
- ⊕ housing upon release
- ⊕ supervision district is not a relocation
- ⊕ anticipated housing plan NOT approved by USPO(s)
- ⊕ no concerns with anticipated housing plan

**RESIDENTIAL REENTRY CENTER (RRC) PLACEMENT**
- ⊕ not recommended for RRC placement
- ⊕ Management Decision: Inmate is serving a life sentence.

**FAMILY CARE**
- ⊕ not responsible for obtaining child care for any dependent children upon release
- ⊕ not responsible for obtaining elder care for any dependent(s) upon release
- ⊕ not responsible for obtaining any other special services for dependents upon release

DAILY LIVING
Continue to maintain proper cell sanitation/personal hygiene.

DAILY LIVING
Continue to maintain proper cell sanitation/personal hygiene.

Name: SAVAGE, DION ERIC                                                  Reg No: 19734-039

## INMATE SKILLS STATUS

| Status | ① | ⓘ | ? | ✓ | Ø |
|---|---|---|---|---|---|
| ① Attention Required | 36.7% | 40.6% | 40.6% | 40.6% | |
| ⓘ Mitigating Issues | 0% | 0% | 0% | 0% | |
| ? Unanswered | 38.9% | 8.3% | 8.3% | 8.3% | |
| ✓ Satisfactory | 19.4% | 46.1% | 46.1% | 46.1% | |
| Ø Not Applicable | 5% | 5% | 5% | 5% | |

| | ① | ⓘ | ? | ✓ | Ø |
|---|---|---|---|---|---|
| Academic | 0% | 0% | 0% | 50% | 0% |
| Vocational/Career | 0% | 0% | 0% | 25% | 10% |
| Interpersonal | 0% | 0% | 0% | 20% | 20% |
| Wellness | 0% | 0% | 25% | 20% | 20% |
| Mental Health | 45% | 0% | 25% | 25% | 15% |
| Cognitive | 45% | 0% | 25% | 20% | 15% |
| Character | 0% | 0% | 20% | 20% | 0% |
| Leisure | 0% | 0% | 20% | 0% | 0% |
| Daily Living | 0% | • | 30% | 0% | 0% |

---

Department of Justice                                   Federal Bureau of Prisons

## INMATE SKILLS DEVELOPMENT PLAN
### PROGRESS REPORT: 02-14-2015

## SIGNATURES

| | |
|---|---|
| Case Manager: M RUSCH X-1712 | *signature* 2-14-15 |
| Unit Manager: or Chairperson: [1] Unit Manager: MARK T. GELLNER EXT. 1700 | *signature* 2-14-15 |
| Inmate: SAVAGE, DION ERIC 19734-039 | *signature* 2-14-15 |



CERTIFIED MAIL

7015 0640 0003 7666 3563

US POSTAGE PAID
PEKIN, IL
**$0.00**
R2304M113378-31

RECEIVED
DEC 2 6 2018
FCI PEKIN
MAIL ROOM

RECEIVED
JAN 02 2019
CLERK'S OFFICE
U.S. DISTRICT COURT

⇔19734-039⇔
US District Court
231 W. Lafayette Blvd
Detroit, MI 48226
United States

Dion Savage 18034-039
Federal Correctional Institut
P.O. Box 5000
Pekin, IL 61555

RECEIVED
DEC 2 0 2018
FCI PEKIN
MAIL ROOM

U.S. MARSHALS

Mail Room
Federal Correctional Institution
P. O. Box 7000
Pekin, IL 61555-7000

The enclosed letter was processed through
special mailing procedures for forwarding
to you. The letter has neither been opened
nor inspected. If the writer raises a
question or problem over which this facility
has jurisdiction, you may wish to return the
material for further information or clarification.
If the writer encloses correspondence for
forwarding to another addressee, please return
the enclosure to the above address.