UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                Case No. 95-cr-50061

        v.                     Hon. Bernard A. Friedman

DION ERIC SAVAGE,

        Defendant.
_____/

## GOVERNMENT'S RESPONSE TO [987, 988, 1000, 1003, 1009] MOTIONS FOR SENTENCE REDUCTION

As the government advised this Court in its response to the motion before the defendant's latest barrage, Dion Eric Savage "is a highly litigious federal prisoner who has already been sanctioned by both this Court and the Sixth Circuit for his abusive litigation." [R. 999 at 1]. Savage's current effort, triggered by the Fair Sentencing Act retroactivity contained in the First Step Act of 2018, is no more meritorious than his prior attempts to vacate his conviction or reduce his sentence.

1

Savage was convicted of an offense that required, by statute, a mandatory life sentence. Applying the Fair Sentencing Act to his conviction doesn't change anything. He's still facing a mandatory life sentence because he was held responsible for around 100 kilograms of crack cocaine at his sentencing. Even if he were technically eligible for resentencing (which he isn't), it would serve no purpose, since there's no other sentence available than the one he's got. So he's not eligible for relief. His various motions and supplemental motions should therefore be denied.

Respectfully submitted,
MATTHEW SCHNEIDER
United States Attorney

/s/ Benjamin C. Coats
Assistant United States Attorney
United States Attorney's Office
Eastern District of Michigan
211 West Fort Street, Suite 2001
Detroit, MI 48226
Phone: (313) 226-9734
Email: Benjamin.Coats@usdoj.gov

Dated: July 26, 2019

## BRIEF IN SUPPORT

Savage's habit of filing a new pleading every time he comes across a new case or idea has complicated what should be a fairly straightforward analysis. He's serving a mandatory life sentence under the Kingpin Statute, based on his leadership of a continuing criminal enterprise through 1996. That enterprise was responsible for at least 100 kilograms of crack cocaine. If the current crack cocaine amounts in Section 841 had been in effect in 1996, would that have made a difference at his sentencing? The answer is plainly no.

Savage isn't eligible for relief because the penalty for the offense of which he was convicted isn't affected by the Fair Sentencing Act. Even if he were considered eligible for resentencing because the statutory penalties in general were modified, nothing could happen at that resentencing but imposition of the original sentence because the offense involved more than the quantity required to trigger a mandatory life sentence.

### *Savage Isn't Eligible For Resentencing*

Pursuant to 18 U.S.C. § 3582(c), "[t]he court may not modify a term of imprisonment once it has been imposed except that (1) . . . (B)

3

the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute . . . ." The relevant statute here—the First Step Act—does not permit relief in this case.

The First Step Act made the Fair Sentencing Act retroactive. More specifically, it gave courts discretion to "impose a reduced sentence as if Sections 2 and 3 of the Fair Sentencing Act of 2010 … were in effect at the time the covered offense was committed." First Step Act § 404(b). Section 2 of the Fair Sentencing Act increased the amount of crack cocaine required to trigger a five-year mandatory minimum from 5 to 28 grams. *See Dorsey v. United States*, 567 U.S. 260, 269 (2012).

The threshold question for Savage is whether CCE is a "covered offense" under the First Step Act. Yes, he claims, because his offense was found to have "involved at least 300 times the quantity of [crack cocaine] described in subsection 841(b)(1)(B) of this title," see Title 21, United States Code, Section 848(b)(2)(A), and 841(b)(1)(B) is the subsection modified by the Fair Sentencing Act. That finding was made by the district judge as sentencing – the Second Superseding Indictment contains no reference to "300 times the quantity," 848(b)(2)(A),

4

mandatory life imprisonment, 841(b)(1)(B), or even crack cocaine. [R. 90].[1] Nor, in 1996, pre-*Apprendi* and *Alleyne*, did it need to. But it's worth noting that we are fully enmeshed in judge-found facts right off the bat in Savage's own argument that he is eligible.

The language of the First Step Act, however, makes it clear that eligibility is conditioned on whether the statutory penalties for a defendant's violation were modified by the Fair Sentencing Act, not merely on whether the penalties were modified in general. *See* First Step Act, § 404(a) (defining a "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified").

By referring to a "violation" that was "committed" on a particular date, Section 404(a) sensibly grounds the eligibility inquiry in the

---

[1]   As far as the charging document goes, the court could as easily have found that the mandatory life provision applied to Savage based on the alternative grounds found in Section 848(b)(2)(B), based on proceeds of the enterprise. Savage would, in that circumstance, have no First Step Act eligibility argument. But the facts of the covered offense would apparently not have supported such a finding, and that's the point the government is making here: Savage's very eligibility is predicated on accepting as legitimate the facts of the offense itself, as determined at his sentencing.

actual conduct involved in the defendant's violation, rather than the statute under which the defendant was convicted. In *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 489 (1985), for instance, the Supreme Court held in the context of 18 U.S.C. § 1964(c) that the term "violation" "refers only to a failure to adhere to legal requirements," not a criminal conviction. The Court explained that when Congress wishes to refer to "prior convictions, rather than prior criminal activity," it uses the term "conviction," not "violation." *Id.* at 489 n.7. And in *United States v. Hayes*, 555 U.S. 415 (2009), the Court held that a statute defining a prior conviction for a "misdemeanor crime of domestic violence" referred in part to the defendant's actual conduct, not the statutory elements of the crime, when it described the prior offense as one "*committed by* a current or former spouse, parent, or guardian." *Id.* at 426 (emphasis added) (quoting 18 U.S.C. § 921(a)(33)(A)); *cf. Nijhawan v. Holder*, 557 U.S. 29, 32 (2009) (holding that a statutory term describing a prior "offense" referred not to a generic crime but to the "particular circumstances in which an offender committed" that offense "on a particular occasion").

Here, Congress directed courts to assess eligibility by reference to the specific violation the defendant committed, rather than his statute of conviction. Congress easily could have declared eligible "any defendant convicted under a statute for which the penalties were altered by the Fair Sentencing Act of 2010, so long as that defendant has not already been sentenced in accordance with that Act." Instead, Congress focused specifically on the "violation" for which the statutory penalties were modified by the Fair Sentencing Act. To repeat, the operative clause is: "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 . . . that was committed before August 3, 2010." According to the defense, this provides that a defendant is eligible whenever the penalties set forth in a statute under which he was charged were modified, regardless of the actual facts of the offense. But this conclusion misreads the statute, erroneously construing the phrase "the statutory penalties for which" to modify "Federal criminal statute," rather than the full phrase "a violation of a Federal criminal statute."

This construction suffers from two related infirmities. First, if all that mattered in determining eligibility were whether the penalties

associated with the defendant's statute of conviction were modified, then any defendant convicted of any drug offense under Section 841 would be eligible for a reduction, even if the offense did not involve crack cocaine. Plainly, Congress included the word "violation" to ensure that only those defendants whose penalties actually were affected by the Fair Sentencing Act would be eligible for a discretionary reduction. And second, if the defense construction were correct, it would make no sense for Congress to have included the word "statutory" in describing the relevant penalties. That is, if Congress intended the phrase "the statutory penalties for which" to modify only "Federal criminal statute," Congress naturally would have dropped "statutory" to avoid an immediate redundancy ("a Federal criminal statute, the penalties for which. . . .").

Moreover, Section 404 directs particular attention to the circumstances under which the particular violation was "committed," not to the statute of conviction generically. Both Sections 404(a) and 404(b) address the date of commission, and in Section 404(a) in particular, Congress added a date-based qualifier: "that was committed before August 3, 2010." Thus, the inquiry into what counts as a "covered

8

offense" necessarily turns on facts specific to the defendant's offense—when it was committed—and not merely the statutory definitions that appear in 21 U.S.C. § 841(b)(1).

Thus, it is clear from the text that a defendant is eligible only if the statutory penalties for his violation were modified by the Fair Sentencing Act. In other words, Congress directed courts assessing eligibility to take a case-specific approach, focusing on the actual violation at issue. Courts therefore should not blind themselves to the actual quantity of crack involved in defendants' offenses—especially if the defendant admitted or did not dispute those quantities. If, as is the case here, the defendant's "violation" involved a quantity of crack that would have triggered the same penalty after enactment of the Fair Sentencing Act, then that defendant's "violation" is not one for which the statutory penalties were modified by the Fair Sentencing Act. Accordingly, the court did not impose a sentence for a "covered offense," and the defendant is ineligible for a reduced sentence.

The defendant's contrary reading not only undermines the statutory text, but also conflicts with Congress's manifest intent, as it would lead to profoundly unfair and illogical disparities between

defendants charged before and after the Fair Sentencing Act. There is no dispute that Congress, in enacting Section 404 of the First Step Act in 2018, was concerned about a particular class of cocaine base defendants: those whose statutory penalties would have been lower but for the fortuity that they were sentenced before August 3, 2010, and therefore could not take advantage of the Fair Sentencing Act. *See Dorsey v. United States*, 567 U.S. 260 (2012). For instance, if a crime involved 200 grams of crack, and the defendant was sentenced under Section 841(b)(1)(A) before August 3, 2010, a court should consider whether to grant a reduced sentence, as the Fair Sentencing Act places the 200-gram offense in Section 841(b)(1)(B). This relief puts the offender in an identical position to those sentenced after August 3, 2010. If, however, the original crime involved at least 280 grams of crack, the defendant's violation would have triggered the same Section 841(b)(1)(A) penalties both before and after the Fair Sentencing Act. If such a defendant had been sentenced after the Fair Sentencing Act, all agree that he could not obtain a discretionary reduction of sentence today. But under the defense approach, had that same defendant been sentenced before the Fair Sentencing Act took effect, he would now be

10

entitled to a discretionary reduction of sentence. Nothing in the text or legislative history of the First Step Act suggests that Congress would have countenanced this asymmetry, which is entirely unfair to defendants sentenced after enactment of the Fair Sentencing Act.

This case illustrates the point. As explained, the defendant's offense indisputably involved more than the 8.4 kilograms of crack now required to support a mandatory life sentence under the Kingpin Statute. Every crack offender charged with and convicted of such a crime since August 3, 2010, has been sentenced under that same provision. If the defendant here were to receive a sentence reduction based on the fiction that his offense involved only 1.5 kilograms of crack, his statutory sentencing exposure would be lower than that faced by everyone who was charged with the same crime after August 3, 2010. The purpose of the First Step Act was to reconcile the disparity between those sentenced before the Act and those sentenced afterwards. It would turn that goal on its head to instead afford greater relief, untethered to any actual facts, to earlier offenders.

To make matters worse, under the defense approach, nearly *every* defendant charged under Sections 841(b)(1)(A) or (b)(1)(B) before the

Fair Sentencing Act would now be eligible for a sentence reduction. Before the Fair Sentencing Act, there was no reason for any prosecutor to allege in an indictment more than 50 grams for a subsection A offense or more than 5 grams for a subsection B offense. Under the Fair Sentencing Act, however, those specific quantities—50 grams and 5 grams—are treated less severely. Thus, under the defense view, nearly every defendant charged under those statutes would be treated differently from identically situated defendants charged after the Fair Sentencing Act became effective, even if their violations involved crack quantities substantially exceeding the new statutory thresholds. The defendant does not, and cannot, offer any justification for the mass disparity he seeks, or any explanation of why Congress would have intended such an odd result.

    In a similar context, in assessing eligibility for a reduced sentence under 18 U.S.C. § 3582(c)(2) based on a retroactive guideline amendment, courts may deny relief upon concluding that the offense involved a drug quantity supporting the same offense level both before and after the amendment. *See, e.g.*, *United States v. Rios*, 765 F.3d 133, 138 (2d Cir. 2014); *United States v. Peters*, 843 F.3d 572, 578 (4th Cir.

12

2016); *United States v. Valentine*, 694 F.3d 665, 670 (6th Cir. 2012);

*United States v. Hall*, 600 F.3d 872, 876 (7th Cir. 2010); *United States v.*

*Anderson*, 707 F.3d 973, 975 (8th Cir. 2013); *United States v. Mercado-*

*Moreno*, 869 F.3d 942, 953–55 (9th Cir. 2017); *United States v. Battle*,

706 F.3d 1313, 1319 (10th Cir. 2013); *United States v. Hamilton*, 715

F.3d 328, 340 (11th Cir. 2013); *United States v. Wyche,* 741 F.3d 1284,

1293 (D.C. Cir. 2014). In reasoning that is directly applicable to the

present situation as well, the Ninth Circuit explained:

> Typically, in those cases, neither the court nor the parties
> anticipate a future Guidelines amendment that will move
> the line and require further fact-finding to determine the
> defendant's eligibility for a sentence reduction under §
> 3582(c)(2).
>
> In those cases where a sentencing court's quantity finding is
> ambiguous or incomplete, a district court may need to
> identify the quantity attributable to the defendant with
> more precision to compare it against the revised drug
> quantity threshold under the relevant Guidelines
> amendment. The Supreme Court indicated that such fact-
> finding was permissible in *Dillon*. *See* 560 U.S. at 828-29
> (stating that "facts found by a judge at a § 3582(c)(2)
> proceeding do not serve to increase the prescribed range of
> punishment").

*Mercado-Moreno*, 869 F.3d at 954. The same fact-finding is necessary

here to compare the drug quantity attributable to the defendant against

the revised drug quantity thresholds under the Fair Sentencing Act, and is not restricted by *Apprendi* and *Alleyne*. In this case, however, the fact-finding is easy: It is indisputable that the defendant's offense involved at least 8.4 kilograms of crack.

It seems obvious that CCE defendants weren't top of mind for the drafters of the First Step Act, who might otherwise have written an eligibility provision that required less in the way of analytic acrobatics. Savage's technical eligibility is a relatively harder question, and it sometimes pays to peek past hard questions to see whether the answer makes any difference to the outcome. In this case, it doesn't.

### *Even if Savage was Eligible for Relief, the Same Sentence Would be Required*

Even if Savage were eligible for resentencing under the First Step Act, he couldn't get any other sentence than the one he received. The presentence investigation report in this case attributed, in paragraph 20, more than 100 kilograms of crack cocaine to Savage's organization.[2]

---

[2]    The Guidelines range in the PSR was, of course, calculated using the drug amount of at least 1.5 kilograms of crack cocaine. That was the highest level at the time, so there was no higher number that could have been referenced in that section. Similarly, there was a reference by the prosecutor at sentencing to the 1.5 kilogram number, but that

At his sentencing, Savage objected to a range of paragraphs that included that attribution, and the court overruled that objection, adopting the PSR. [R. 343 at 14-17].

Until the First Step Act made it convenient to do so, Savage never tried to argue that he was responsible for only 1.5 kilograms of crack cocaine. Nor could he have, since more than that was seized from one of his co-conspirators during a single traffic stop, and a cooperating witness testified to more than 100 kilograms. *See* PSR ¶¶ 20, 29. He denied any involvement in drug dealing whatsoever, perjuring himself at trial and carrying that denial through sentencing. But the district court disagreed in no uncertain terms, telling him, among other things, "You were involved in organizing, operating a large scale narcotics trafficking operation, large amounts of crack cocaine were sold from your party stores located in Flint. The conspiracy took place over several years and you profited financially to a considerable extent from your involvement in drug trafficking." [R. 343 at 40-41].

---

reference clearly used that number because it was "sufficient" and was immediately followed by the more specific actual amount of "101 half [sic, should apparently be 101.5] kilos of crack cocaine" that "the record [would] sustain independent of [the minimum required]." [R. 343 at 33].

In his attempt to avoid the import of the facts found at his sentencing, Savage tries to split the finest of hairs. The judge-found facts at his sentencing determine whether his offense is "covered" by the First Step Act, but the same act somehow requires a shift to the "drug type and quantity … *charged in the indictment*" (his emphasis) when conducting the resentencing. [R. 1000 at 9]. He attempts this maneuver by reference to an out-of-circuit district court decision, *United States v. Powell*, 360 F. Supp. 3d 134 (N.D.N.Y. 2019).

*Powell* is quite a different case, though. His indictment charged a specific amount of crack cocaine, for one thing, that was less than what the government sought to hold him accountable for at resentencing. *Id.* at 135-36. And the PSR, accepted by the court at sentencing, held him responsible for no more than 150 grams of crack, again, less than what the government sought to hold him accountable for at resentencing. *Id.* at 139. Both of those things were critical to the *Powell* decision, and neither is present in this case.

Savage's other cases similarly dissolve on contact. In *United States v. Glore*, 371 F. Supp. 3d 524 (E.D. Wisc. 2019), was charged and convicted of an offense alleging five grams of crack cocaine, which was

the amount used to set his career offender Guidelines range. *Id.* at 531. On resentencing, the court declined to proceed as if the sentencing court might have calculated his Guidelines using a different amount than that found by the jury. *See id.* at 532. That determination isn't relevant to the question before the Court in this case.

The defendant in *United States v. Pierre*, 372 F. Supp. 3d 17 (D.R.I. 2019), was similarly indicted for an offense involving five or more grams of crack, though he admitted in his plea colloquy to a higher amount (28.77 grams). *Id.* at 21. Faced with this conflict, the district court held that "the sentencing court should look to whether the offense of conviction was modified by the Fair Sentencing Act of 2010 to determine [First Step Act] eligibility." *Id.* at 22. But there is no similar conflict here. In order to establish that he is eligible in the first place, Savage has to rely on the offense not as charged, but as determined at sentencing. There isn't any alternative formulation of the offense to fall back on.

Savage cites *United States v. Simons*, 375 F. Supp. 3d 379 (E.D.N.Y. 2019), which merely contains a cursory analysis that cites to *Alleyne v. United States*, 570 U.S. 99 (2013), for the proposition that

17

statutory minimums are based on facts determined by juries, not by judges. 375 F. Supp. 3d at 387.

That is certainly true now, but it wasn't in 1997, when Savage was sentenced. *Alleyne* itself wasn't decided until three years after the Fair Sentencing Act of 2010, and it was unanimously concluded by the circuit courts that it did not apply retroactively. *See Butterworth v. United States*, 775 F.3d 459, 464–65 (1st Cir. 2015); *United States v. Redd*, 735 F.3d 88, 91–92 (2d Cir. 2013) (per curiam); *United States v. Reyes*, 755 F.3d 210, 212–13 (3d Cir. 2014); *United States v. Olvera*, 775 F.3d 726, 730 & n.12 (5th Cir. 2015); *In re Mazzio*, 756 F.3d 487, 489–91 (6th Cir. 2014); *Crayton v. United States*, 799 F.3d 623, 624 (7th Cir. 2015); *Walker v. United States*, 810 F.3d 568, 574 (8th Cir. 2016); *Hughes v. United States*, 770 F.3d 814, 817–19 (9th Cir. 2014); *In re Payne*, 733 F.3d 1027, 1029–30 (10th Cir. 2013); *Jeanty v. Warden, FCI-Miami*, 757 F.3d 1283, 1285–86 (11th Cir. 2014). Even after *Apprendi*, courts could and did make findings subjecting defendants to statutory mandatory minimum penalties, a practice authorized by *Harris v. United States*, 536 U.S. 545 (2002).

18

Nothing in the First Step Act suggests that Congress intended to adopt a different methodology now. And declining to reduce Savage's sentence doesn't involve any increase in his sentence based on judge-found facts, so it doesn't offend *Apprendi* or *Alleyne* to deny him relief today.

This Court therefore can and should determine whether the defendant's violation involved quantities that would have triggered the same penalties had the Fair Sentencing Act been in effect. Here, it is evident that the same statutory minimum would have applied, and the defendant is not eligible for relief.

While the district courts have not uniformly adopted the government's approach (or any other approach, for that matter), several courts have persuasively approved the position set forth here. Judge Hinkle, for example, in a lengthy opinion in *United States v. Blocker*, 2019 WL 2051957 (N.D. Fla. Apr. 25, 2019), observed that the defense position "would not eliminate disparity but instead would introduce enormous disparity in the opposite direction, giving earlier crack defendants a lower penalty range not available to later crack

defendants." *Id.* at *5. The court identified another absurdity in the

defense position:

> Similarly, the Fair Sentencing Act was intended to lower the sentencing disparity between crack and powder, changing the 100-to-1 drug-amount ratio to approximately 18-to-1. The First Step Act was intended to give that same benefit to earlier crack defendants. The offense-controls theory [determining eligibility based on actual conduct] accomplishes that result. But if sentences for crack offenses are now lowered based on the indictment-controls theory [looking only to the charge in the indictment], an enormous disparity will be created in the opposite direction. Many defendants who committed crack offenses prior to adoption of the Fair Sentencing Act will be subject to lower penalty ranges than defendants who committed offenses involving the same amount of powder.

> Consider, for example, two defendants, one who conspired in 2007 to distribute 5 kilograms of powder, and the other who conspired to distribute 5 kilograms of crack, both with two prior felony drug convictions. In 2007, before adoption of the Fair Sentencing Act, both would have been subject to mandatory life sentences—the powder defendant because the offense involved 5 kilograms or more, and the crack defendant because the offense involved 50 grams or more. The indictments would have tracked the statute, so the powder defendant's indictment would have charged 5 kilograms or more of powder, and the crack defendant's indictment would have charged 50 grams or more of crack. If both were convicted, both would have faced mandatory life sentences.

> Under the offense-controls theory, nothing would change. Both defendants would still be subject to mandatory life sentences, just as two defendants who committed the same

20

offenses today would be subject to mandatory life sentences. There is no reason to believe Congress intended any different result.

But under the indictment-controls theory, the crack defendant would now face a minimum of only 10 years, not life, because he would be treated as having committed an offense involving only 50 grams of crack—not 280 or more as required to trigger the life sentence. This would be the result even though the offense actually involved 5 kilograms of crack and the government could prove it. The powder defendant, in contrast, would continue to serve the mandatory life sentence, because nothing in the Fair Sentencing Act or First Step Act allows a sentence reduction for a defendant whose offense involved only powder. Congress could not have intended to treat crack defendants this much more favorably than powder defendants.

*Id.* at *6; *see also United States v. Russo*, 2019 WL 1277507, at *1 (D. Neb. Mar. 20, 2019) ("[T]he Court cannot conclude that the First Step Act anticipates a full re-sentencing with application of laws and Guidelines that have changed since a defendant's original sentencing, other than the retroactive application of the reduced penalties for crack cocaine set out in the Fair Sentencing Act. If the Court were to engage in such a re-sentencing, applying other laws and Guidelines that have been changed since Russo's original sentencing, it would work an injustice to offenders sentenced in the past who did not have a crack

cocaine conviction qualifying for sentence reduction pursuant to the Fair Sentencing Act of 2010.").

A number of other courts thus far have agreed that eligibility for relief is determined based on the actual quantity involved in the offense. *See United States v. Potts*, 2019 WL 1059837, at *2 (S.D. Fla. Mar. 6, 2019); *United States v. Haynes*, 2019 WL 1430125, at *2 (D. Neb. Mar. 29, 2019); *United States v. Howard*, 2019 U.S. Dist. LEXIS 109055 (D. Neb. June 28, 2019); *United States v. Banuelos*, 2019 WL 2191788 (D.N.M. May 21, 2019) (agrees with the government's quantity argument; to avoid disparity, would also deny relief as a matter of discretion); *United States v. Jackson*, 2019 U.S. Dist. LEXIS 109993 (E.D. Pa. June 26, 2019); *cf. United States v. Glover*, 2019 WL 1924706, at *7 (S.D. Fla. May 1, 2019) (Lenard, J.) (holding that *Apprendi* does not apply to a resentencing under Section 404); *United States v. Washington*, 2019 WL 2410078, at *2 (S.D. Fla. June 7, 2019) (Rosenberg, J.) (denying motion to reduce term of supervised release, holding that the First Step Act does not permit reconsideration of "extraneous" issues such as application of *Apprendi* and *Alleyne*).

### *Reduction Would be Unwarranted Even if Authorized*

Even if the Court believed the First Step Act authorized a lower sentence, such a sentence would not be required. Section 404(c) of the Act makes clear that any sentence reduction is discretionary, stating, "[n]othing in this section shall be construed to require a court to reduce any sentence pursuant to this section." The statutory maximum would still be life. 21 U.S.C. § 848. And it is obvious from the record that Savage would have been sentenced to life imprisonment whether the necessary quantity was 1.5 kilograms or 8.4 kilograms, and similarly situated offenders facing sentencing now would have to be sentenced to life. *See Dorsey*, 567 U.S. at 276-79 (expressing the importance of consistency in sentencing similarly situated offenders when determining the retroactive application of a statutory amendment). Any sentence reduction would be a windfall not available to Savage if he were tried for the same offense today, or really even if the Fair Sentencing Act had been in effect at the time of his offense, when he would still have been accountable for 300 times the quantity in 841(b)(1)(B). *See United States v. Patterson*, 2019 WL 3072705 (W.D.N.C. July 12, 2019) (denying discretionary relief to a defendant

23

who would have been prosecuted after the Fair Sentencing Act under a provision mandating the same penalties he faced in his original proceedings, so it would cause undue disparity to grant relief).

### Conclusion

For the foregoing reasons, the Defendant's motions for sentence reduction should be denied.

Respectfully submitted,

MATTHEW SCHNEIDER
United States Attorney

/s/ Benjamin C. Coats
Assistant United States Attorney
United States Attorney's Office
Eastern District of Michigan
211 West Fort Street, Suite 2001
Detroit, MI 48226
Phone: (313) 226-9734
Email: Benjamin.Coats@usdoj.gov

Dated: July 26, 2019

Certificate of Service

I certify that on July 26, 2019, I electronically filed this motion for the United States with the Clerk of the United States District Court for the Eastern District of Michigan using the ECF system, which will send notification of such filing to the following:

Joan E. Morgan, Attorney for Defendant

/s/ Benjamin C. Coats
Assistant United States Attorney
United States Attorney's Office
Eastern District of Michigan
211 West Fort Street, Suite 2001
Detroit, MI 48226
Phone: (313) 226-9734
Fax: (313) 226-3265
Email: Benjamin.Coats@usdoj.gov